OPINION
{¶ 1} Defendant-appellant, Victor B. Moore, appeals his convictions, the amount of jail-time credit he received, and the imposition of fines in the Butler County Court of Common Pleas. We affirm the convictions, the jail-time credit, and the imposition of fines.
 {¶ 2} On July 20, 2002, at approximately 3:00 a.m., Alisha Moore was driving Maria Misquez's car in Middletown. As Alisha drove the car, she noticed her estranged husband, Victor, driving in the car behind her. Victor had previously been convicted of domestic violence against Alisha and she feared for her safety. At the time, domestic violence charges involving Alisha were pending against Victor.
 {¶ 3} Alisha drove to the Middletown Police Station. Victor chased after Alisha, running stop signs and red lights. When Alisha arrived at the Middletown Police Station, she exited the car, leaving the car running and the driver's door open. Alisha and Misquez ran into the police station toward the dispatcher's window.
 {¶ 4} Victor followed closely behind Alisha. Victor entered the police station, grabbed Alisha by the arms, shook her, and told her that she was coming with him. He also told Alisha "don't do this" and that it was "time to go." Alisha struggled with Victor as he dragged her toward the door. During the struggle, Alisha's friend, Misquez, was attempting to help Alisha get away from Victor.
 {¶ 5} The dispatcher witnessed the altercation and called the jail for officer assistance. Sergeant Dan Magill responded. As he walked from his office to the lobby he could hear Victor yelling at Alisha using profane language. Sgt. Magill recognized the Moores when he reached the lobby. Sgt. Magill told Victor that he was under arrest. Victor responded, "No, I'm not," and then he fled the police station. Before Victor could exit both sets of doors, Sgt. Magill was able to catch Victor by the shirt. However, Victor's shirt ripped and he continued to flee.
 {¶ 6} Victor ran towards Misquez's open and still running car. Sgt. Magill caught up to Victor again. Victor shoved Sgt. Magill and got into the driver's seat of Misquez's car. Sgt. Magill grabbed Victor around the neck in an attempt to stop Victor from further eluding arrest. Sgt. Magill ordered Victor to exit the vehicle. However, Victor refused and accelerated the car to 35 m.p.h., dragging Sgt. Magill for five to six car lengths. Sgt. Magill ordered Victor to stop the vehicle. Victor jerked the car to the right as he was accelerating, and Sgt. Magill was thrown from the car, breaking his arm at the ulnar stylus when he landed on the ground. Officers pursued Victor and in the course of his apprehension, Victor struck Lieutenant George Jefferey in the face.
 {¶ 7} A grand jury charged Victor with seven crimes: domestic violence with a prior conviction, felonious assault on a police officer causing him serious physical harm, failure to comply with an order of a police officer, grand theft of a motor vehicle, resisting arrest, assault on a police officer, and intimidation of a victim or witness in a criminal case. A jury trial was held on November 4 and 5, 2002. The jury convicted Victor of all counts except for grand theft of a motor vehicle. On that charge the jury convicted him of the lesser included offense of unauthorized use of a motor vehicle.
 {¶ 8} The trial court sentenced Victor to serve 11 months for domestic violence and fined him $1,500; eight years for felonious assault on a police officer and $10,000 in fines; 15 months for failure to comply with a police order and $2,500 in fines; 17 months for assault on a police officer and $2,500 in fines; six months for unauthorized use of a motor vehicle and $1,000 in fines; 90 days for resisting arrest and $750 in fines; and three years for witness intimidation and $5,000 in fines. The trial court ordered the sentences for all the felony counts to be served consecutively. Victor appeals the decision of the trial court arguing three assignments of error:
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "The evidence was insufficient/the conviction was against the manifest weight of the evidence."
 {¶ 11} In determining the sufficiency of the evidence, the function of the appellate court is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 12} The standard for determining whether a judgment in a criminal case is against the manifest weight of the evidence has been set forth by the Ohio Supreme Court in State v. DeHass (1967),10 Ohio St.2d 230, paragraph two of the syllabus which states:
 {¶ 13} "A reviewing court may not reverse a judgment of conviction in a criminal case in a trial court, where the record shows that a verdict of guilty was returned by a jury on sufficient evidence and where no prejudicial error occurred in the actual trial of the case or in the instructions given the jury by the court."
 {¶ 14} The test for whether the judgment is against the manifest weight of the evidence is broader than the test for whether there is sufficient evidence to support a conviction. In considering the manifest weight of the evidence, the reviewing court weighs the evidence in a limited sense to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find the defendant guilty beyond a reasonable doubt. The syllabus rule of Jenks, which applies only to review of the sufficiency of the evidence, requires that the evidence be viewed in a light most favorable to the state. By comparison, a review of the manifest weight of the evidence does not require that the evidence be so viewed, but the ultimate test remains whether the result could reasonably be reached from the evidence. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely
(1988), 39 Ohio St.3d 147. Under both standards, an appellate court must ordinarily defer to the fact-finder's resolution of factual and credibility issues. DeHass, 10 Ohio St.2d 230.
 {¶ 15} The crime of domestic violence with a prior conviction is defined by R.C. 2919.25(A), which states, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member. * * * If the offender previously has pleaded guilty to or been convicted of domestic violence * * * a violation of division (A) or (B) of this section is a felony of the fifth degree."
 {¶ 16} Felonious assault on a police officer with serious physical harm is defined by R.C. 2903.11(A)(1), which states, "[n]o person shall knowingly do either of the following: (1) Cause serious physical harm to another * * * (D) * * * [i]f the victim of a violation of division (A) of this section is a peace officer * * * and if the victim suffered serious physical harm as a result of the commission of the offense, felonious assault is a felony of the first degree."
 {¶ 17} Failure to comply with an order of a police officer is defined by R.C. 2921.331(B), which states, "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."
 {¶ 18} Assault on a police officer is defined by R.C. 2903.13(A), which states, "[n]o person shall knowingly cause or attempt to cause physical harm to another * * * (3) If the victim of the offense is a peace officer, * * * while in the performance of their duties, assault is a felony of the fourth degree."
 {¶ 19} Unauthorized use of a motor vehicle is defined by R.C.2913.03, which states, "[n]o person shall knowingly use or operate * * * a motor vehicle * * * without the consent of the owner or person authorized to give consent."
 {¶ 20} Resisting arrest is defined by R.C. 2921.33(A), which states, "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."
 {¶ 21} Intimidation of a victim or witness in a criminal case is defined by R.C. 2921.04(B), which states, "[n]o person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or * * * witness involved in a criminal action or proceedings in the discharge of the duties of the * * * witness."
 {¶ 22} The record demonstrates that Alisha was the victim of domestic violence charges pending against Victor. Alisha testified that Victor told her "you're going to find a way out of this, and get me out of this [domestic violence charge]." Alisha testified that when she saw Victor following her, knowing that he did not want her to testify against him, she "was afraid that he was going to kill [her]." To protect herself, Alisha drove to the Middletown Police Station and entered the lobby. Victor followed Alisha, entered the police station, grabbed her by the arms, shook her, and told her that she was coming with him. The dispatcher witnessed the altercation and called the jail for officer assistance. Sgt. Magill entered the lobby and told Victor that he was under arrest. Victor fled the police station, ran towards Misquez's open and still running car, and entered the vehicle. Victor then disregarded Sgt. Magill's order to exit the vehicle. Victor accelerated the car to 35 miles per hour, dragging Sgt. Magill for five to six car lengths. Sgt. Magill ordered Victor to stop the vehicle. Victor disregarded the order and Sgt. Magill was thrown from the car, breaking his arm at the ulnar stylus. Officers pursued Victor. In the course of his apprehension, Victor struck Lt. Jefferey.
 {¶ 23} Based upon review of the record, and given that the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact to decide, this court finds that Victor's convictions of domestic violence with a prior conviction, felonious assault on a police officer, failure to comply with an order of a police officer, unauthorized use of a motor vehicle, resisting arrest, assault on a police officer, and intimidation of a victim or witness in a criminal case could reasonably be reached from the evidence presented at trial. This court cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52.
 {¶ 24} For the foregoing reasons, this court finds that there was sufficient evidence to find defendant guilty of domestic violence with a prior conviction, felonious assault on a police officer, failure to comply with an order of a police officer, unauthorized use of a motor vehicle, resisting arrest, assault on a police officer, and intimidation of a victim or witness in a criminal case and this court likewise finds that his convictions were not against the manifest weight of the evidence. As such, Victor's first assignment of error is overruled.
 {¶ 25} Assignment of Error No. 2:
 {¶ 26} "The court erred in failing to credit appellant's sentence for the days he spent in jail for pretrial incarceration."
 {¶ 27} Victor argues that the trial court failed to properly calculate the number of days credit for his pretrial incarceration. Victor maintains that he should have been credited with 146 days of jail-time credit as of December 12, 2002.
 {¶ 28} R.C. 2967.191 and R.C. 2949.12 provide for the mandatory crediting of jail-time credit. See State v. Thorpe (June 30, 2000), Franklin App. No. 99-AP-1180, at 2; State v. Persons (Mar. 22, 2000), Meigs App. No. 99CA10, at fn. 1. R.C. 2967.191 provides that, "[t]he adult parole authority shall reduce the minimum and maximum sentence or the definite sentence of a prisoner by the total number of days that the prisoner was confined for any reason arising out of the offense for which he was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine his competence to stand trial or sanity, * * *, and confinement while awaiting transportation to the place where he is to serve his sentence."
 {¶ 29} R.C. 2949.12 states that the prisoner's sentencing order should also reflect, "* * * pursuant to section 2967.191 of the Revised Code * * * the total number of days, if any, that the felon was confined for any reason prior to conviction and sentence." R.C. 2949.12. See, also, State v. Stafford, Noble App. No. 265, 2002-Ohio-5243, at ¶ 52. When R.C. 2967.191 is read in light of the broad language highlighted in R.C. 2949.12, appellant is entitled to credit for all of his pretrial confinement. See id.
 {¶ 30} Victor was arrested on July 20, 2002 and then released on December 27, 2002. Victor maintains that he should have been credited with 146 day of jail-time credit as of December 12, 2002. From December 12, 2002 to the date of Victor's release, December 27, 2002, is a lapse of 15 days. The nunc pro tunc entry, filed on January 23, 2001, indicates that the court determined that Victor served 161 days including travel time, under this case number. The 146 days Victor argues he should be credited with plus the additional 15 days equals a total of 161 days of jail-time credit.
 {¶ 31} While the sentencing court did not set forth the credit for time served in its sentencing entry, it did file a separate entry crediting appellant with time served. A separate entry, filed by the court, is an appropriate method to notify the adult parole authority of credit for time served. See State v. Crane (Apr. 1, 1986), Franklin App. No. 85AP-780, at 5. Therefore, the court performed its duty to notify the adult parole authority of appellant's credit for time served prior to being sentenced. Consequently, the second assignment of error is overruled.
 {¶ 32} Assignment of Error No. 3:
 {¶ 33} "The court abused its discretion in imposing $23,250 in fines."
 {¶ 34} Victor argues that "the evidence clearly shows that [he] has no capability to pay a fine." Therefore the trial court abused its discretion in determining that he could pay fines totaling $23,250.
 {¶ 35} R.C. 2929.22 governs the imposition of fines for misdemeanor convictions and provides in section (F) that the court shall not impose a fine that exceeds the amount that the offender is or will be able to pay without undue hardship. Victor was fined $1,000 for his unauthorized use of a motor vehicle conviction, a first-degree misdemeanor. He was also fined $750 for his resisting arrest conviction, a second-degree misdemeanor.
 {¶ 36} A trial court may also impose financial sanctions upon felony offenders under R.C. 2929.18. R.C. 2929.18(A)(3)(a) provides that the fine for a felony of the first degree shall be "not more than twenty thousand dollars." Victor was fined $10,000 for his felony assault on a police officer conviction, a first-degree felony. R.C. 2929.18(A)(3)(c) provides that the fine for a felony of the third degree shall be "not more than ten thousand dollars." Victor was fined $5,000 for his intimidation of a witness conviction, a third-degree felony. R.C. 2929.18(A)(3)(d) provides that the fine for a felony of the fourth degree shall be "not more than five thousand dollars." Victor was fined $2,500 for his failure to comply with a police order conviction, and fined $2,500 for his assault on a police officer conviction, both convictions are fourth-degree felonies. R.C. 2929.18(A)(3)(e) provides that the fine for a felony of the fifth degree shall be "not more than two thousand five hundred dollars." Victor was fined $1,500 for domestic violence with a prior conviction, a fifth-degree felony.
 {¶ 37} A determination that a criminal defendant is indigent for purposes of receiving appointed counsel does not prohibit the trial court from imposing a financial sanction. State v. Kelly (2001),145 Ohio App.3d 277, 283. The ability to pay a fine over a period of time is not equivalent to the ability to pay legal counsel a retainer fee at the onset of criminal proceedings. State v. Johnson (1995),107 Ohio App.3d 723, 728, appeal not allowed (1996), 75 Ohio St.3d 1484. Accordingly, the fact that Victor had appointed counsel does not require this court to conclude that the trial court's imposition of fines is contrary to law. Imposition of fines will not be reversed absent an abuse of discretion. See State v. Stevens (1992), 78 Ohio App.3d 847, 851.
 {¶ 38} Before a trial court imposes such sanctions, however, the trial court "shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6). There are no express factors that must be considered or specific findings that must be made. State v. Martin, 140 Ohio App.3d 326, 338, 2000-Ohio-1942. The trial court is not required to hold a hearing to comply with R.C.2929.19(B)(6), although it may choose to do so pursuant to R.C. 2929.18(E). All that is required under R.C. 2929.19(B)(6) is that the trial court "consider the offender's present or future ability to pay." Id. Compliance with R.C. 2929.19(B)(6) can be shown when a trial court considers a Presentence Investigation Report ("PSI") that details pertinent financial information. Id. at 338-339. R.C. 2929.22(F) also requires the trial court consider whether a defendant will be able to pay an imposed fine for a misdemeanor without undue hardship.
 {¶ 39} In the case at bar, the trial court did not specifically question appellant about his ability to pay the fines without undue hardship. However, the record in this case is not devoid of evidence to suggest that the trial court considered the factors set forth in R.C.2929.19(B)(6) and R.C. 2929.22(F). At the December 12, 2002 sentencing hearing, the trial court stated, "this court has considered all the information contained in the presentence investigation report in this case." The PSI report states that Victor "claims he has been working at AK steel through Labor Union 534 as a de-scaler in the furnace, earning $18.80 per hour." Victor stated his financial obligations include "$75.00 per month for insurance/gas, $600.00 per month for rent, and $150.00 per month for utilities." The PSI report also states that Victor "denies ever filing bankruptcy." Furthermore, the PSI states that Victor "rates his health as good. He stated that he suffers from no physical limitations and denies being under the care of a physician or taking prescription medication at the present time."
 {¶ 40} Consequently, the trial court did not act unreasonably, arbitrarily, or unconscionably in fining Victor since it is apparent that some inquiry was made regarding his ability to pay the fines and no time limit was placed upon payment of the fines.
 {¶ 41} Furthermore, Victor did not object to the amount of the fines during the sentencing hearing. Where the "offender does not object at the sentencing hearing to the amount of the fine and does not request an opportunity to demonstrate to the court that he does not have the resources to pay the fine, he waives any objection to the fine on appeal." State v. Frazier (Oct. 9, 1997), Cuyahoga App. No. 71675-78, at 6. Thus, Victor waived any argument concerning his ability to pay these fines. The third assignment of error is overruled.
 {¶ 42} Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.