OPINION
{¶ 1} Defendant-appellant, Lamont C. Randall, appeals from the April 7, 2003 judgment entry of the Franklin County Court of Common Pleas, finding him guilty of burglary, a felony of the fourth degree, and sentencing him to 18 months incarceration. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On January 28, 2003, appellant was indicted on one count of burglary. Appellant's trial commenced on March 31, 2003. The victim, Norevell Jackson, and Officer Smith Weir were the only two witnesses to testify on behalf of the state. Appellant did not present any witnesses nor did he testify in his own defense. The following facts were elicited from the testimony of Jackson and Officer Weir.
 {¶ 3} Jackson and her 28-year-old son, Todd, lived at 1818 Lancashire Avenue, Columbus, Ohio. On January 19, 2003, Jackson testified that she was awakened by the sounds of someone hollering outside of her house. (Vol. I, Tr. 27.) Jackson testified that she heard someone yelling "hey, hey, hey." Id. Jackson did not respond to the yelling and decided to go back to bed. She then heard the person say, "Help me. Help me. Somebody help me, please." (Vol. I, Tr. 28.) The yelling also awakened Jackson's son. Jackson then testified as to what happened next:
* * * [A]ll of a sudden, we heard this knock on my front door, and somebody was knocking. And I said, `Somebody's at my door.' He says, `Help me. Help me.' And I said, `Sir, whoever you are, please get away from my door.' I say, `I'm calling the cops.' So he said, `Help me. Help me. Help me. I'm going to die.'
I said, `Well, I'm calling the cops, they will help you. Just please get away from my door.' So then, this double pounding got on my door, just pounding. I says, `Sir, please leave before you break my door, please.'
(Vol. I, Tr. 28-29.)
 {¶ 4} Jackson testified that she never approached the front door, but stood about 15 feet away yelling at the suspect. (Vol. I, Tr. 46.) Jackson testified that she was scared and frightened. (Vol. I, Tr. 29.) Her son reached for the cordless telephone to call 911. As Jackson's son handed her the telephone, she heard a "bash" coming from her bedroom. (Vol. I, Tr. 31.) When Jackson entered her bedroom, she saw a face in the window. Jackson said that the glass to her window was broken and the suspect had his head inside of her window. (Vol. I, Tr. 32.) Jackson testified that she told the suspect, "Oh, no, you did not try to break my window, come in my house." (Vol. I, Tr. 35.) The suspect did not respond to Jackson. About 10 to 15 minutes later, the police showed up at Jackson's residence. Jackson talked to the police for about 20 to 25 minutes.
 {¶ 5} Officer Weir testified that he was not the first unit to arrive at Jackson's residence, but that a two-officer unit had made it there first. (Vol. I, Tr. 72.) Officer Weir testified that the primary unit aired over the radio that the suspect fled from Jackson's house. Officer Weir proceeded to slow down as he was approaching Jackson's residence. As he was cruising the area, he heard a moaning noise, and got out of his cruiser to investigate. He approached the area where the sound was coming from and saw a person inside of a screened-in porch about five or six houses down from Jackson's residence. (Vol. I, Tr. 73.) Officer Weir testified that the person he saw in the screened-in porch matched the description that he had received. (Vol. I, Tr. 75.) Officer Weir called for backup. The suspect was arrested and placed in the backseat of the police cruiser. Officer Weir then drove closer to Jackson's residence where Jackson came out to the cruiser and identified the suspect as appellant. (Vol. I, Tr. 39, 62, 77.) Jackson testified that appellant was lying down in the back of the cruiser, but was not wearing the hood on his head. (Vol. I, Tr. 62.) Jackson testified that the light was on in the cruiser and she could see appellant's face. (Vol. I, Tr. 63.)
 {¶ 6} On April 2, 2003, the jury returned a guilty verdict on the burglary charge of the indictment. On April 4, 2003, appellant was sentenced to 18 months incarceration and ordered to pay $150 in restitution to Jackson. Appellant filed a timely appeal, assigning the following as error:
 ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred when it entered a judgment of conviction against the defendant when the evidence was insufficient to sustain the conviction and the conviction was against the manifest weight of the evidence presented.
 ASSIGNMENT OF ERROR NUMBER TWO
The defendant did not receive effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I, of the Ohio Constitution.
 {¶ 7} At the onset, it appears in his first assignment of error that appellant is arguing that the trial court erred in its judgment because the evidence was insufficient and his conviction of burglary was against the manifest weight of the evidence. However, a careful review of appellant's argument reveals that he is primarily challenging the admission of Jackson's eyewitness identification testimony as being inherently suggestive. Appellant specifically challenges the state's evidence based on the testimony of a single eyewitness who identified appellant as the perpetrator. Appellant argues that Jackson's identification was so "inherently suggestive * * * that [it] was lacking in normal indicators of reliability." (Appellant's brief at 5.)
 {¶ 8} A suggestive confrontation increases the likelihood of misidentification. State v. Parker (1990), 53 Ohio St.3d 82, 87. See, also, Manson v. Brathwaite (1977), 432 U.S. 98, 106, 97 S.Ct. 2243 (a confrontation is unnecessarily or unduly suggestive when the witness has been shown but one subject). Thus, "[a]n unnecessarily suggestive identification process does not violate due process of such identification possesses sufficient indicia of reliability." Parker, at 87, citing Manson, 97 S.Ct. 2243, 2249. See, also, State v. Poole (1996), 116 Ohio App.3d 513, 522 (reliability of a witness's identification is determined by examining whether the identification was unreliable under the totality of the circumstances).
 {¶ 9} Key factors in determining reliability include the opportunity of the witness to view the criminal at the time of the crime; the witness's degree of attention; the accuracy of the witness's prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. State v. Madison (1980), 64 Ohio St.2d 322, 332; Neil v. Biggers (1972), 409 U.S. 188, 199, 93 S.Ct. 375. As such, identifications made subject to an otherwise impermissibly suggestive procedure are admissible where the identification itself is nevertheless deemed to be reliable. State v. Payne, Franklin App. No. 02AP-723, 2003-Ohio-4891, at ¶ 34. The central question is whether, under the totality of the circumstances, the identification is reliable, even though the confrontation procedure was suggestive. Parker, at 87.
 {¶ 10} In the present matter, Jackson had the opportunity to view the person she identified as appellant during the crime. Jackson initially observed appellant as he had his head stuck through her broken bedroom window. Jackson testified that the light was on in her bedroom and that her bedroom was fully lit. (Vol. I, Tr. 40.) Jackson was standing about 12 or 13 feet away from appellant. (Vol. I, Tr. 42.) She testified that appellant was wearing a dark hooded coat over his head but the hood was not covering his face. (Vol. I, Tr. 43, 55.) Jackson further stated that appellant was not wearing glasses, that he had no facial hair, and no visible cuts. (Vol. I, Tr. 58.) Jackson also indicated that when appellant had his head in her window, she never took her eyes off of appellant and looked at him for about 10 seconds. (Vol. I, Tr. 43, 58.) Moreover, the "showup" at which Jackson identified appellant occurred about 30 to 40 minutes from the time appellant left Jackson's residence to the time Jackson identified appellant in the backseat of the police cruiser. Jackson testified that when she saw appellant lying in the police cruiser, he was not wearing the hood on his head, but she was still able to see his face to identify him.
 {¶ 11} "There is no prohibition against a viewing of a suspect alone in what is called a `one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy." Madison, at 332, citing Bates v. United States (C.A.D.C. 1968), 405 F.2d 1104, 1106. Indeed, Jackson testified that at the time of the "showup" that she was able to identify appellant as the perpetrator, because the light was on in the police cruiser. (Vol. I, Tr. 63.) While Jackson's identification of appellant may have been suggestive, it was nonetheless reliable. Given the nature of this testimony, we find the evidence was sufficient and not against the manifest weight of the evidence. As such, appellant's first assignment of error lacks merit and is not well-taken.
 {¶ 12} In his second assignment of error, appellant argues that trial counsel's failure to file a motion to suppress Jackson's identification testimony constituted ineffective assistance of counsel. Appellant contends that because Jackson was the only eyewitness to identify him, a motion to suppress would have permitted a challenge to the reliability of her identification and her veracity.
 {¶ 13} In order to prevail on his claim of ineffective assistance of counsel under Strickland v. Washington (1984), 466 U.S. 668, 686, appellant must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." State v. Reynolds (1998), 80 Ohio St.3d 670, 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Strickland at 686.) Thus, a two-part test is necessary to examine such claims. First, appellant must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. State v. Keith (1997), 79 Ohio St.3d 514, 534. Second, appellant must show that but for the counsel's errors, there is a reasonable probability that the results of the trial would be different. Id.
 {¶ 14} The burden of showing ineffective assistance of counsel is on the defendant. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558 ("Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel"); State v. Carpenter (1996),116 Ohio App.3d 615, 626 (court of appeals is to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance").
 {¶ 15} The failure to file a motion to suppress is not per se ineffective assistance of counsel. State v. Madrigal (2000),87 Ohio St.3d 378, 389, certiorari denied (2000), 531 U.S. 838,121 S.Ct. 99, quoting Kimmelman v. Morrison (1986), 477 U.S. 365, 384,106 S.Ct. 2574. Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted. State v. Robinson (1996), 108 Ohio App.3d 428, see, also, State v. Blagajevic (1985), 21 Ohio App.3d 297, 299-300. Rather, the party claiming ineffective assistance of counsel must show the failure to file such a motion caused him prejudice. Robinson, at 433.
 {¶ 16} Appellant claims that since there was little evidence demonstrating that Jackson's identification was reliable, then there was the substantial likelihood that her testimony would have been suppressed. To the extent that appellant attempts to demonstrate ineffective assistance of counsel based on trial counsel's failure to file a motion to suppress the identification, appellant's assignment of error is unpersuasive. As discussed in assignment of error number one, while there was a certain amount of suggestiveness in the confrontation, it was not enough to give rise to a misidentification, warranting a suppression of the identification. Appellant's trial counsel's failure to file a motion to suppress was therefore not prejudicial.
 {¶ 17} Additionally, appellant maintains, on appeal, that he was unlawfully arrested and detained because there was no sufficiently detailed description given of the suspect to constitute probable cause. A police officer may make a brief, warrantless, investigatory stop without probable cause when the officer has a reasonable suspicion that the individual is or has been involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868; Delaware v. Prouse (1979), 440 U.S. 648,99 S.Ct. 1391; State v. Ball (1991), 72 Ohio App.3d 43, 46, citing Adams v. Williams (1972), 407 U.S. 143, 92 S.Ct. 1921. Reasonable suspicion means that the investigating officer must be able to point to specific, articulable facts that, when coupled with any rational inferences that may be drawn from those facts, warrant the investigation. Terry, Delaware, Ball, supra.
 {¶ 18} In the instant case, the facts on the record support the existence of reasonable suspicion on the part of Officer Weir. Officer Weir observed appellant five to six houses down from Jackson's residence. Appellant was lying in a screened-in porch area of a residence where he did not reside. Officer Weir testified that appellant matched the description that was given by Jackson. Viewed in the totality of the circumstances, Officer Weir had a reasonable suspicion that appellant was involved in criminal activity.
 {¶ 19} Appellant has failed to show that trial counsel's failure to file a motion to suppress would have affected the outcome of his trial. Such a motion would have been meritless. Therefore, appellant was not prejudiced by his trial counsel's failure to file a meritless motion. As such, appellant's second assignment of error lacks merit and is not well-taken.
 {¶ 20} For the foregoing reasons, appellant's first and second assignments of error are overruled and the decision of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
WATSON and SADLER, JJ., concur.