OPINION
{¶ 1} On June 25, 2004, defendant-appellant, Eddie L. Shipley, was indicted on one count of aggravated robbery with firearm specifications, a felony of the first degree, one count of robbery with firearm specifications, a felony of the second degree, one count of robbery with firearm specifications, a felony of the third degree and one count of felonious assault with firearm specifications, a felony of the second degree. After a jury trial, appellant was found guilty of counts one and two, aggravated robbery with specification and robbery, but not guilty of counts three and four. The trial court merged the sentences for counts one and two and appellant was sentenced to four years of incarceration on both counts with an additional three years for the firearm specification to be served consecutively. Appellant filed a notice of appeal and raises the following assignments of error:
Assignment of Error One
APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error Two
THE EVIDENCE AGAINST THE APPELLANT WAS INSUFFICIENT TO SUSTAIN A JURY VERDICT OF GUILTY.
Assignment of Error Three
THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS IS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
 {¶ 2} The charges arose out of an incident occurring during the early morning hours of December 3, 2002. The victim, James Goodwin, testified that around noon on December 2, 2002, he visited James Allen. Three other men were there at the time and attempted to connect an Xbox gaming system to the television. (Tr. 22-23.) After approximately five minutes, the three men left with the Xbox system and shortly thereafter, Goodwin also left. He returned to Allen's house approximately 7:00 or 8:00 p.m., and the two shared a 40-ounce bottle of Red Bull. (Tr. 26-27.) Goodwin went to the store to buy another bottle and the two had consumed approximately one-half of it when there was a knock on the door. (Tr. 29-31.) Allen answered the door and it was the same three men who had been there earlier in the day, one of which was appellant. (Tr. 31.) One of the individuals, not appellant, pointed a gun at Goodwin and told him to "run it." (Tr. 33.) Although Goodwin did not know what that meant, he realized quickly that he was being robbed and started taking off three diamond rings and a gold necklace and handed them to appellant, who was standing next to him. (Tr. 33-34.) Appellant put the items in his coat pocket. The gunman asked if he should kill Goodwin and the third man answered yes and appellant also said to kill him. Allen then ran out the door and the gunman and appellant followed. Goodwin heard gunshots outside. The third man, or "short guy" then attacked Goodwin with a tire iron. (Tr. 36-39.) After a fight, Goodwin was able to run away. He ran to his car and drove home. He had been stabbed in the hand and thought his arm was broken. On the way to the hospital, he flagged down a police officer and told him what happened. Then he realized he had been shot in the arm.
 {¶ 3} Columbus Police Officer Bernard Anderson testified that on December 3, 2002, at approximately 10:00 p.m., he initiated a traffic stop because the tags on the vehicle were not registered to that vehicle. (Tr. 116.) Four people were inside, the driver, Kenneth Williams, appellant was the front seat passenger and the two passengers in the back seat were Clifton Hale and Thomas Albert. The officers found an Xbox gaming system in the car. Columbus Police Officer Everett testified that he gave Thomas Albert a ride back to his car and Albert gave him a .9 mm handgun from the trunk of his car. (Tr. 147-148.) Later, tests demonstrated that the shell casings found at Allen's house the night of the robbery were fired from that gun. (Tr. 161.)
 {¶ 4} The first two assignments of error are related and shall be addressed together. By the first assignment of error, appellant contends that his conviction was against the manifest weight of the evidence and by the second assignment of error he contends that the evidence was insufficient to sustain a jury verdict of guilty. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386.
 {¶ 5} The test for determining whether a conviction is against the manifest weight of the evidence differs somewhat from the test as to whether there is sufficient evidence to support the conviction. With respect to manifest weight, the evidence is not construed most strongly in favor of the prosecution, but the court engages in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. See State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
* * * Weight of the evidence concerns "the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief." (Emphasis added.) Black's [Law Dictionary (6th Ed. 1990)] at 1594). Thompkins, at 387.
 {¶ 6} Appellant argues that the evidence used to convict him was unreliable, especially Goodwin's testimony, as the sole eyewitness. Appellant contends that Goodwin's testimony was unreliable because Goodwin testified that since the age of 12 he regularly consumed four or five 40-ounce bottles of malt liquor per day but only shared approximately 60 ounces the day of the robbery. Also, appellant contends that since Allen was not located to testify to corroborate Goodwin's testimony, Goodwin's testimony is unreliable.
 {¶ 7} Appellant argues that this court should consider the factors outlined in State v. Mattison (1985),23 Ohio App.3d 10, to determine whether the evidence was against the manifest weight of the evidence. In Mattison, the Eighth District Court of Appeals examined eight factors, including that a reviewing court is not required to accept as true the incredible, whether the evidence is uncontradicted, whether a witness was impeached, consideration of what was not proved, the certainty of the evidence, the reliability of the evidence and the extent to which the evidence is vague, uncertain, conflicting, fragmentary or not fitting together in a logical pattern. Id. at 14, citing Statev. Gaston (Jan. 11, 1979), Cuyahoga App. No. 37846.
 {¶ 8} Finally, appellant argues that Goodwin's testimony was unreliable since appellant did not fit within Goodwin's given description. Goodwin's description of the suspects immediately after the robbery was that they all ranged in age between 25 to 30, with a height between five feet six inches and five feet eight inches and weighed between 150 and 170 pounds. During the trial, appellant was 20 years old, approximately five feet 11 inches and weighed approximately 230 pounds. Goodwin did not describe appellant with a scar on his face even though he had a scar on his face which was approximately two inches long.
 {¶ 9} The Mattison factors are guidelines, not "hard and fast rules which must be followed." Id. at 14. Goodwin testified that he regularly drinks four to five 40-ounce bottles of malt liquor and has a very high tolerance. (Tr. 48-49.) Goodwin being intoxicated bears upon his credibility, however, such determinations of credibility and the weight to be given to the evidence are for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. While intoxication is a factor bearing upon credibility, it does not render the evidence incredible. Goodwin immediately picked appellant's picture from the photo arrays and was 100 percent sure that appellant was involved in the robberies. (Tr. 45; 51.) Appellant and three other men were found later that same day with an Xbox and one of the men had the gun that was involved in the robbery. (Tr. 116-125; 147-148.)
 {¶ 10} The police officer who interviewed Goodwin on the night of the incident and wrote the report testified that Goodwin initially described the assailants as black males, 25 to 30 years old, ranging from five feet six inches to five feet eight inches and weighing 167 pounds, 150 to 170 pounds and 150 pounds. (Tr. at 98.) Appellant established at trial that he was close to five feet 11 inches and weighed approximately 230 pounds. (Tr. 132-133.) However, the witness also testified that appellant had gained weight since December 2002. (Tr. 138.) Another police officer testified that appellant had told him he weighed 190 pounds in November 2003 and appellant weighed significantly more at the time of trial. (Tr. 197-198.) Goodwin's failure to mention appellant's scar does not render the evidence incredible since Goodwin testified that his attention was focused on the gun. (Tr. 70.) There is sufficient evidence from which, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt and there is sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. The jury was permitted to believe the eyewitness testimony identifying appellant as one of the assailants. Appellant's first and second assignments of error are not well-taken.
 {¶ 11} By the third assignment of error, appellant contends that he was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. In order to demonstrate that his counsel's representation was ineffective, appellant must demonstrate that: (1) counsel's performance was deficient; and (2) this deficient performance prejudiced the defense. Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052. "A defendant does not state a claim for ineffective assistance of counsel unless his attorney acted unreasonably given the facts of the case, and the unreasonable conduct was prejudicial to the defense." State v.Mills (1992), 62 Ohio St.3d 357, 370, certiorari denied, Millsv. Ohio (1992), 505 U.S. 1227. Counsel need not raise meritless issues. State v. Hill (1996), 75 Ohio St.3d 195. "There is a strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy."State v. Nichols (1996), 116 Ohio App.3d 759, 764. To demonstrate prejudice, the defendant must prove there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Strickland, supra, at 694.
 {¶ 12} Appellant argues his counsel was ineffective by not moving for a Crim.R. 29 motion of acquittal at the end of the prosecution's evidence, by failing to request an in limine order suppressing Goodwin's identification of appellant during the photo array and in court, by failing to request expert fees to hire its own ballistics expert to counter the testimony of the prosecution's expert, and by failing to object to the admission of the ballistics evidence after finding that the shell casings had been destroyed prior to defense inspection or testing.
 {¶ 13} As discussed in the second assignment of error, there was sufficient evidence to support appellant's conviction and a trial court may grant a motion for acquittal only where, construing the evidence most strongly in favor of the state, the evidence is insufficient to sustain a conviction. Thus, the trial court would not have granted the Crim.R. 29 motion and counsel is not required to raise meritless issues. Hill, supra.
 {¶ 14} Appellant contends that defense counsel was deficient in failing to request an in limine order suppressing Goodwin's identification testimony. Appellant contends that the reliability of Goodwin's identification should have been tested in light of the standards set forth in Neil v. Biggers (1972),409 U.S. 188, 93 S.Ct. 375.
 {¶ 15} "Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted." State v. Randall, Franklin App. No. 03AP-352, 2003-Ohio-6111, at ¶ 15, citing State v.Robinson (1996), 108 Ohio App.3d 428. It is well-established that a motion to suppress evidence "is not used to test the reliability or weight of the evidence." State v. Mengistu,
Franklin App. No. 02AP-497, 2003-Ohio-1452, at ¶ 43, quotingState v. Stewart (Dec. 15, 1997), Washington App. No. 96CA18. There also is no evidence that appellant was subjected to any suggestive pretrial identification procedure used by the police. "No due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is, instead, the result of observations at the time of the crime." State v. Santiago, Franklin App. No. 02AP-1094, 2003-Ohio-2877, at ¶ 28, citing Coleman v. Alabama (1970),399 U.S. 1, 5-6, 90 S.Ct. 1999. In this case, Goodwin saw appellant twice on the day of the robbery. The first time they had a conversation at Allen's house and they were together approximately five minutes. The second time, appellant stood next to Goodwin and Goodwin testified he looked appellant "dead in the eyes" because appellant was giving his vote to have Goodwin killed. (Tr. 48.) Goodwin immediately selected appellant's picture from the photo array and Goodwin was 100 percent sure appellant was involved. (Tr. 51.) Accordingly, the motion to suppress would not have been granted and appellant's counsel was not ineffective for failing to make such a motion.
 {¶ 16} Appellant also contends that his counsel was ineffective by failing to request expert fees to hire his own ballistics expert to counter the testimony of the prosecution's expert. The decision whether to hire a ballistics expert to counter the testimony of the prosecution's expert is a matter of trial strategy, and absent a showing of prejudice, does not deprive a defendant of effective assistance of counsel. SeeState v. Williams (1991), 74 Ohio App.3d 686, 695. The reliance on cross-examination of the prosecution's witness rather than producing a defense expert does not in itself constitute ineffective assistance. See State v. Madrigal (2000),87 Ohio St.3d 378, 400; State v. Nicholas (1993), 66 Ohio St.3d 431,436; State v. Thompson (1987), 33 Ohio St.3d 1, 10-11
(concluding that counsel was not ineffective for choosing to cross-examine the state's expert instead of requesting the appointment of a forensic pathologist). In this case, there was no indication that there was any question regarding whether the shell casings matched the gun and appellant's argument is speculative. Given these circumstances, we cannot say that the failure to hire a ballistics expert was not sound trial strategy.
 {¶ 17} Finally, appellant contends that his trial counsel was ineffective by failing to object to the admission of the ballistics evidence after finding that the shell casings had been destroyed prior to defense inspection or testing. For a successful claim, a defendant must show that the destruction, loss, or lack of preservation occurred in bad faith on the part of the police. Arizona v. Youngblood (1988), 488 U.S. 51,109 S.Ct. 333. In this case, there is no evidence of bad faith. The original police detective had the casing destroyed upon her retirement, at a time when she had no reason to believe the casings would later become part of a criminal case. (Tr. 176.) Thus, appellant's claims of ineffective assistance of counsel fail and appellant's third assignment of error is not well-taken.
 {¶ 18} For the foregoing reasons, appellant's three assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Klatt, P.J., and French, J., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.