OPINION
{¶ 1} Defendant-appellant, Kevin D. Bean, appeals from the judgment of the Franklin County Court of Common Pleas, whereby the trial court convicted appellant of two counts of felonious assault with firearm specifications, aggravated burglary with a firearm specification, kidnapping with a firearm specification, aggravated robbery with a firearm specification, and attempted murder with a firearm specification.
 {¶ 2} The Franklin County Grand Jury indicted appellant on the following offenses, which all contained firearm specifications: (1) one count of aggravated burglary, a first-degree felony, in violation of R.C. 2911.11; (2) two counts of felonious assault, a second-degree felony, in violation of R.C. 2903.11; (3) three counts of kidnapping, first-degree felonies, in violation of R.C. 2905.01; (4) three counts of aggravated robbery, first-degree felonies, in violation of R.C. 2911.01; (5) three counts of robbery, second-degree felonies, in violation of R.C. 2911.02; (6) three counts of robbery, third-degree felonies, in violation of R.C. 2911.02; and (7) one count of attempted murder, a first-degree felony, in violation of R.C. 2923.02 (as it relates to R.C. 2903.02). The charges stemmed from a home invasion that took place on June 17, 2004.
 {¶ 3} Appellant pled not guilty to the above charges, and a jury trial ensued. At trial, Phillip McGhee, one of the victims of the home invasion, testified on behalf of plaintiff-appellee, the State of Ohio. McGhee testified that, after the home invasion, Columbus Police Detective Gary Bowman presented a photo array to McGhee. Specifically, McGhee testified as follows:
 [MCGHEE:] [DETECTIVE BOWMAN] ASKED ME IF I COULD IDENTIFY [APPELLANT] AMONG THE SIX PHOTOGRAPHS.
 [APPELLEE:] DID HE TELL YOU THAT [APPELLANT] WAS DEFINITELY IN THOSE PHOTOGRAPHS?
 [MCGHEE:] YES.
 [APPELLEE:] HE SAID YOU WOULD BE ABLE TO FIND HIM IN THERE?
 [MCGHEE:] I BELIEVE HE DID, I'M NOT POSITIVE BUT I BELIEVE SO. YOU KNOW, I BELIEVE AS SOON AS I LOOKED AT THESE PICTURES I AUTOMATICALLY THOUGHT THAT THE GUY WAS [APPELLANT] WHO WAS IN THESE PICTURES.
 * * *
 [APPELLEE:] DID [DETECTIVE BOWMAN] POINT OUT ANY OF THE PHOTOGRAPHS TO LOOK AT?
 * * *
 [MCGHEE:] NO.
 [APPELLEE:] ALL RIGHT. TELL THE JURY WHAT [DETECTIVE BOWMAN] DID?
 [MCGHEE:] HE PUT THE PAPER IN FRONT OF ME AND SAID THAT I NEED YOU TO IDENTIFY [APPELLANT] AND TAKE A LOOK AND IF ANY OF THESE LOOK LIKE HIM, MARK AN "X" AND SIGN YOUR NAME AND THAT'S WHAT I DID. [APPELLEE:] IS THAT EXACTLY WHAT HE SAID?
 [MCGHEE:] YES, THAT'S EXACTLY WHAT HE SAID.
(Tr. at 82-83.) On cross-examination, McGhee testified that, during the home invasion, he "looked dead into [appellant's] eyes" and that he would never forget appellant's eyes. (Tr. at 92.)
 {¶ 4} Detective Bowman also testified on appellee's behalf in regards to the photo array that he presented to McGhee. Detective Bowman testified:
 I TOLD [MCGHEE] * * * THAT I'M GOING TO SHOW YOU SIX PHOTOGRAPHS ON A SHEET OF PAPER IN NO PARTICULAR ORDER OF IMPORTANCE.
 I TOLD HIM THAT THE SUSPECT MAY BE INCLUDED IN THE PHOTO ARRAY AND HE MAY NOT BE AND THAT YOU'RE NOT REQUIRED TO MAKE A SELECTION, BUT JUST LOOK AT THEM AND IF YOU SEE ONE YOU THINK IS A SUSPECT YOU LET ME KNOW AND IF YOU DON'T, THAT'S FINE, TOO. BUT YOU ARE NOT REQUIRED TO MAKE A SELECTION * * *.
(Tr. at 266.)
 {¶ 5} Before presenting the case to the jury, appellee dismissed: (1) two kidnapping counts; (2) two aggravated robbery counts; and (3) all six second and third-degree felony robbery counts. Subsequently, the jury found appellant guilty on the remaining counts and accompanying firearm specifications.
 {¶ 6} On January 26, 2006, the trial court held a sentencing hearing. At the sentencing hearing, appellant's trial counsel made no constitutional challenges under Blakely v. Washington (2004),542 U.S. 296, to appellant's sentence or to Ohio's felony sentencing laws. Rather, appellant's trial counsel argued that, except for the attempted murder conviction, the trial court could not impose maximum prison sentences on appellant's offenses under Ohio's felony sentencing laws. Appellant's trial counsel also argued that, under Ohio's felony sentencing laws, the trial court could not impose consecutive sentences.
 {¶ 7} The trial court concluded that appellant had committed "the worst form of the offenses[.]" (Tr. at 442.) Such a finding is a factor that triggers maximum prison sentences under R.C. 2929.14(C). However, the trial court did not impose maximum prison sentences on any of appellant's offenses.
 {¶ 8} The trial court did order appellant to serve consecutive sentences on the offenses of aggravated burglary, attempted murder, and one felonious assault. In doing so, the trial court made findings under R.C. 2929.14(E)(4). Specifically, the trial court stated:
 THE COURT HAS FOUND THAT THE CONSECUTIVE SENTENCES IN THIS CASE, THE COURT FINDS ARE NOT DISPROPORTIONATE TO THE SERIOUSNESS OF THE CONDUCT THAT YOU DISPLAYED AND THE DANGER YOU POSED TO THE PUBLIC.
 FURTHER, THE COURT FINDS THAT TWO MULTIPLE OFFENSES COMMITTED ARE MORE THAN ONE MORE OF THE COURSE OF CONDUCT AND HARM SO COMMITTED, ARE SO GREAT AND SO UNUSUAL THAT NO SINGLE PRISON TERM COULD COMPLEMENT ANY PART OF THE COURSE OF CONDUCT OR COULD ADEQUATELY COMPLEMENT THE SERIOUSNESS OF YOUR CONDUCT; AND THE COURT FINDS THE SHORTEST PRISON TERM WOULD DEMEAN THE SERIOUSNESS OF THE CONDUCT AND WOULD NOT ADEQUATELY PROTECT THE PUBLIC AS TO ANY FUTURE CRIMES BY YOURSELF.
 THE COURT HAS LISTENED CAREFULLY TO YOUR PREVIOUS RECORD AND THE COURT HAS CONSIDERED YOUR PREVIOUS RECORD AS TO THE CONSECUTIVE SENTENCES IMPOSED.
(Tr. at 442.)
 {¶ 9} The trial court ordered appellant to serve concurrent sentences on the remaining offenses. The court then merged the firearm specifications and ordered appellant to serve a three-year prison sentence on the merged firearm specifications, consecutive to the other sentences.
 {¶ 10} Appellant appeals, raising one assignment of error:
 APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE, THEREBY DENYING HIM HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.
 {¶ 11} In his single assignment of error, appellant claims that his trial counsel rendered ineffective assistance. We disagree.
 {¶ 12} The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 13} Appellant first argues that his trial counsel was ineffective by failing to file a motion to suppress testimony concerning McGhee identifying appellant in Detective Bowman's photo array. Appellant claims that Detective Bowman used unconstitutionally suggestive procedures when he presented the photo array to McGhee. Specifically, appellant asserts that Detective Bowman "used a heavy-handed approach and told McGhee that the perpetrator was in the photo array. [Detective Bowman] also ordered McGhee to identify the perpetrator."
 {¶ 14} The " `[f]ailure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted.'" State v. Shipley, Franklin App. No. 05AP-385, 2006-Ohio-950, at ¶ 15, quoting State v. Randall, Franklin App. No. 03AP-352, 2003-Ohio-6111, at ¶ 15. Trial counsel is not required to file futile motions. See State v. McDonall (Dec. 16, 1999), Cuyahoga App. No. 75245.
 {¶ 15} As to the suspect identification issue, we note that "[i]t is the likelihood of misidentification which violates a defendant's right to due process." State v. Parker (1990), 53 Ohio St.3d 82, 87. Courts disapprove of suggestive identification procedures because they increase the likelihood of misidentification. Neil v. Biggers (1972),409 U.S. 188, 198; Parker at 87. However, an unnecessarily suggestive identification process does not violate a defendant's right to due process if the resulting identification possesses sufficient indicia of reliability. Manson v. Brathwaite (1977), 432 U.S. 98, 106;Parker at 87. The central question is whether, under the totality of the circumstances, the identification is reliable even though the confrontation procedure was suggestive. Neil at 199; Parker at 87.
 {¶ 16} Initially, we conclude that the evidence does not establish that Detective Bowman used suggestive identification procedures in the photo array. Specifically, contrary to appellant's assertions, the record does not indicate that Detective Bowman "told McGhee that the perpetrator was in the photo array." Although McGhee testified that Detective Bowman stated that appellant was definitely in the photo array, McGhee ultimately clarified that Detective Bowman actually gave him the photo array and stated: "I need you to identify [appellant] and take a look and if any of these look like him, mark an `X' and sign your name[.]" (Tr. at 83.) Likewise, Detective Bowman testified that, when he presented the photo array to McGhee, he stated: "[T]hat the suspect may be included in the photo array and he may not be * * *, but just look at them and if you see one you think is a suspect you let me know and if you don't, that's fine, too." (Tr. at 266.) Likewise, the evidence does not establish that Detective Bowman ordered McGhee "to identify the perpetrator." Rather, Detective Bowman told McGhee that he was "not required to make a selection" from the photo array. (Tr. at 266.)
 {¶ 17} Further, we find no unreliability from McGhee's identification of appellant from Detective Bowman's photo array. McGhee testified that he "looked dead into [appellant's] eyes" during the home invasion, that he would never forget appellant's eyes and that when he looked at the photo array, he "automatically" recognized appellant. (Tr. at 92, 82.)
 {¶ 18} Accordingly, pursuant to Neil, Manson, and Parker, we find no due process violation from McGhee's identification of appellant in Detective Bowman's photo array. Thus, we conclude that the trial court would not have granted a motion to suppress testimony concerning the identification, and appellant's trial counsel did not render ineffective assistance by failing to file such a futile motion to suppress. SeeShipley at ¶ 15; McDonall; Strickland at 687, 694.
 {¶ 19} Next, appellant argues that his trial counsel rendered ineffective assistance at his January 26, 2006 sentencing hearing. As noted above, the trial court concluded at the hearing that the offenses appellant committed were the worst form of the offenses. Such findings are in accord with R.C. 2929.14(C), which states: "[T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense[.]" Nonetheless, the trial court did not impose the maximum authorized prison sentences on appellant's offenses.
 {¶ 20} The trial court did order appellant to serve consecutively the sentences on convictions for aggravated burglary, attempted murder, and one felonious assault. In doing so, the trial court made findings under R.C. 2929.14(E)(4), which states that:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 * * *
 (b) * * * [T]he harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 21} In arguing his trial counsel's ineffectiveness, appellant contends that his trial counsel should have challenged, underBlakely, the constitutionality of the trial court's findings and, overall, his sentences. Blakely stems from Apprendi v. New Jersey
(2000), 530 U.S. 466, 490, wherein the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Otherwise, the sentence violates a defendant's right to a jury trial under theSixth Amendment to the United States Constitution and Fourteenth Amendment due process guarantees.Apprendi at 476-478, 497. In Blakely, the United States Supreme Court defined " `statutory maximum' for Apprendi purposes" as "the maximum sentence a judge may impose solely on the basis of the facts reflectedin the jury verdict or admitted by the defendant." (Emphasis sic.)Blakely at 303.
 {¶ 22} Since appellant's sentencing, the Ohio Supreme Court decided the applicability of Blakely to Ohio's felony sentencing laws inState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. In Foster, the Ohio Supreme Court concluded that portions of Ohio's felony sentencing statutes violate the Sixth Amendment to the United States Constitution
in the manner set forth in Blakely. Foster at ¶ 50-83. Specifically, the court stated that, under certain circumstances, the felony sentencing statutes require a trial court to make "specific findings before imposing a sentence beyond that presumed solely by a jury verdict or admission of a defendant." Id. at ¶ 54. In particular, the Ohio Supreme Court declared unconstitutional R.C. 2929.14(C) and 2929.14(E)(4), the statutes involved in appellant's case. See Foster at ¶ 83. Accordingly, in Foster, the Ohio Supreme Court severed the unconstitutional statutes from Ohio's felony sentencing laws. Id. at ¶ 99. The Ohio Supreme Court then concluded that cases pending on direct review "must be remanded to trial courts for new sentencing hearings[.]" Id. at ¶ 104.
 {¶ 23} In State v. Draughon, Franklin App. No. 05AP-860,2006-Ohio-2445, at ¶ 7, we acknowledged the "broad language the Supreme Court of Ohio used in Foster when it ordered resentencing for all cases pending on direct review." However, we concluded that "a defendant who did not assert a Blakely challenge in the trial court waives that challenge and is not entitled to a resentencing hearing based onFoster." Id. In concluding as such, we "consider[ed] the language used in United States v. Booker (2005), 543 U.S. 220, 125 S.Ct. 738, the case that Foster relied on in arriving at" its decision to sever the unconstitutional statutes from Ohio's felony sentencing laws.Draughon at ¶ 7. "In Booker, the United States Supreme Court appliedBlakely to the Federal Sentencing Guidelines. The Booker Court applied its holding to all cases on direct review." Draughon at ¶ 7. However, the Booker court "expected reviewing courts to apply `ordinary prudential doctrines,' such as waiver * * * to determine whether to remand a case for a new sentencing." Draughon at ¶ 7, quotingBooker at 268. "Thus, in accordance with the well-settled doctrine of waiver of constitutional challenges, and the language inBooker, we [held] that a Blakely challenge is waived by a defendant sentenced after Blakely if it was not raised in the trial court."Draughon at ¶ 8.
 {¶ 24} Here, as appellant recognizes, his trial counsel waived aBlakely challenge to his sentences by not asserting the challenge at the sentencing hearing. Draughon at ¶ 8. In reviewing whether such a waiver rises to the level of ineffective assistance, we initially note that a trial court's application of the statutory sentencing scheme in existence before Foster generally benefitted defendants. State v.Peeks, Franklin App. No. 05AP-1370, 2006-Ohio-6256, at ¶ 15. As an example, before Foster, a trial court had to make a number of findings under R.C. 2929.14(C) and 2929.14(E)(4) before it could sentence a defendant to maximum and consecutive sentences, respectively. SeePeeks at ¶ 15. These required findings limited the trial court's sentencing discretion and prohibited maximum and consecutive sentences unless each and every finding was made. See Peeks at ¶ 15. However, because Foster found unconstitutional and severed from the sentencing statutes R.C. 2929.14(C) and 2929.14(E)(4), trial courts now have "full discretion" within the sentencing statutory ranges to sentence defendants to maximum and consecutive sentences and do not need to make any findings to support their decision. See Foster at paragraph seven of the syllabus; Peeks at ¶ 15.
 {¶ 25} Thus, due to Foster, a remand for the trial court to re-sentence appellant would subject appellant to the trial court's "full discretion" to impose maximum and consecutive sentences with no need to make any findings to support its decision. See Foster at paragraph seven of the syllabus; see, also, Peeks at ¶ 15 (noting that it was more difficult for a trial court to impose a consecutive sentence beforeFoster than now). Because Foster generates such a result, we can find no prejudice from appellant's trial counsel's failure to raise aBlakely challenge to appellant's sentences, and we conclude that appellant's trial counsel's failure to raise the Blakely challenge does not rise to the level of ineffective assistance. See Strickland at 694.
 {¶ 26} In disposing of the above ineffective assistance claim by finding no prejudice, we note that we need not also determine whether trial counsel's performance was deficient by failing to raise theBlakely challenge. See Strickland at 697; In re C.C., Franklin App. No. 04AP-883, 2005-Ohio-5163, at ¶ 103. Specifically:
 * * * [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. * * *
Strickland at 697; In re C.C. at ¶ 103.
 {¶ 27} Having found that appellant's trial counsel did not render ineffective assistance, we overrule appellant's single assignment of error. As such, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
SADLER and McGRATH, JJ., concur.