OPINION
{¶ 1} Defendant-appellant, Tammy Dyer, appeals a decision of the Butler County Court of Common Pleas convicting her of aggravated theft and sentencing her to six years in prison. We affirm in part and reverse in part.
 {¶ 2} From approximately December 2001 to May 2003, appellant served as a personal assistant to the victim, Richard Wilmer, who was 84 years old when she began working for him. The position entailed transporting Mr. Wilmer around town for lunches, family visits, trips to his farm, shopping, and other errands. Appellant was required to spend as much as seven days a week, eight to ten hours a day, with him. Appellant maintains that she and her family grew close to Mr. Wilmer during her employment.
 {¶ 3} A retired attorney, Mr. Wilmer refused aid from others and guarded his financial affairs closely. He repeatedly declined to allow family members to help organize and pay his bills or otherwise intervene in monetary matters. According to appellant, Mr. Wilmer eventually requested her assistance with his financial dealings. Mr. Wilmer possessed a securities account with Prime Vest Financial Services. According to the testimony of Prime Vest senior compliance analyst Jane Lawless, any dividends or income that came into the securities account would be swept into a money market account. Appellant became involved with Mr. Wilmer's selling securities around September 2002. The disposition of the proceeds of these sales, as well as the disposition of additional cash missing from Mr. Wilmer's savings, comprise the subject matter of the instant prosecution.
 {¶ 4} On September 22, 2004, a grand jury indicted appellant for one count of aggravated theft in violation of R.C.2913.02(A)(1), a first-degree felony, alleging the theft of property worth $100,000 or more from an elderly person. See R.C.2913.02(B)(3).[1] Appellant entered a plea of not guilty. Following a three day trial, the jury returned a guilty verdict on February 22, 2005. Judgment was entered including a six year prison term with five years of post-release control. Appellant was also ordered to pay restitution in the amount of $273,486.95 to Adair Kornman, Mr. Wilmer's daughter. Appellant timely appealed, raising five assignments of error which will be addressed out of order to facilitate analysis.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "APPELLANT'S CONVICTION MUST BE REVERSED AS THE CONVICTION IS BASED UPON INSUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} In her first assignment of error, appellant argues that there was insufficient evidence to show that she exerted control over the victim's property without his consent. Appellant also challenges the manifest weight of the evidence supporting her conviction. While the two issues are included in one assignment of error, they require separate analysis.
 {¶ 8} The review of a claim that a conviction is not supported by sufficient evidence focuses upon whether, as a matter of law, the evidence presented at trial is legally sufficient to sustain a verdict. State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52. Implicating a question of law, this test does not allow the court to weigh the evidence. State v.Martin (1983), 20 Ohio App.3d 172, 175. "[T]he relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Emphasis omitted.) State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, ¶ 34.
 {¶ 9} Appellant was convicted of aggravated theft in violation of R.C. 2913.02(A)(1), which provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]" In addition, R.C. 2913.02(B)(3) provides that theft from an elderly person or disabled adult of property valued at $100,000 or more makes the offense a first-degree felony.
 {¶ 10} A thorough review of the record reveals that appellant's conviction for aggravated theft was supported by sufficient evidence. There is no dispute that Mr. Wilmer was over the age of 65 at the time of these events, and that the amount of money at issue was in excess of $100,000. In addition, the record evidence shows that appellant operated with a purpose to deprive Mr. Wilmer of his property. Appellant claims that Mr. Wilmer endorsed checks from the sales of his stock and she deposited the checks into her account at his direction and for his benefit. The evidence, if believed, shows that all or most of these sizeable checks that Mr. Wilmer endorsed were deposited directly into appellant's personal savings account. In an attempt to provide an explanation, appellant alleges that this money was taken at Mr. Wilmer's insistence because he sought to take care of her and her family. Yet, at trial, Mr. Wilmer denied ever giving this money to appellant.
 {¶ 11} Detective Jeffrey Chase investigated the allegations against appellant after being alerted by Mr. Wilmer's daughter Adair Kornman. Chase testified that appellant was not able to recall exactly where the money went when he questioned her about handling Mr. Wilmer's checks. According to appellant, Mr. Wilmer agreed to re-route his mail to her post office box in September 2002 after he began mismanaging bills and other items. She admitted to authoring deposit slips for a number of checks that were deposited into Mr. Wilmer's savings account before the address change, but denied retaining the remaining cash after depositing only portions of each of these checks. She later admitted to Detective Chase that she deposited $28,610.46 and $27,102.26 into her personal account from two stock sales because Mr. Wilmer allegedly wanted her to have the money, but stated that she used the money to care for Mr. Wilmer. Although appellant originally claimed that she forgot what she had done with the January 15, 2003 check for $33,793.35, the detective found that she had deposited it on January 21, 2003 into her personal bank account. These actions of appellant and her responses to police questioning further support the conclusion that her purpose was to deprive Mr. Wilmer of his money. These actions also exhibit appellant's exertion of control over Mr. Wilmer's property.
 {¶ 12} Additional evidence supports the conclusion that appellant knowingly obtained or exerted control over Mr. Wilmer's property. Those acquainted with him stated that Mr. Wilmer was a very stubborn and private man who insisted that his family remain uninvolved in his finances. The evidence does not support the inference that such a person would willingly relinquish nearly complete control over his finances. Appellant testified that Mr. Wilmer allowed her to accompany him to First Financial, where she observed his conversations with investment broker Michael Cole regarding the Prime Vest account. On these trips to the bank, appellant claims that Mr. Wilmer introduced her as his granddaughter, though a bank employee not involved in Mr. Wilmer's accounts testified that appellant presented herself as such. Appellant had the opportunity to learn the extent and value of Mr. Wilmer's holdings during these conversations.
 {¶ 13} After Mr. Wilmer began selling his stock in August 2002, Cole testified that appellant called the bank on a number of occasions to order sales and have a check sent to Mr. Wilmer. In fact, Cole stated that appellant was the sole person with whom he communicated regarding Mr. Wilmer's investment account starting in early September 2002. She was involved in ordering the sales of stock as well as delivering endorsed stock certificates. Such conduct shows that appellant knowingly exerted control over Mr. Wilmer's property.
 {¶ 14} Once Mr. Wilmer commenced the selling of his stocks, appellant would receive the checks from these sales at her post office box. Following this address change, from September 2002 to February 2003, the evidence shows that Prime Vest mailed out checks intended for Mr. Wilmer for stock sales in the amounts of $28,610.46, $27,102.26, $33,793.35, $17,921.27, and $20,000. As stated, appellant claims that Mr. Wilmer demanded that she take the checks, and that she reluctantly agreed after her protests were met with his stubborn insistence. Although appellant claims that she returned the cash from these checks to Mr. Wilmer, the record reflects that appellant deposited all or large portions of these checks into her personal account at Lebanon Citizens National Bank for all but the $17,921.27 check. Such action further demonstrates appellant's control over Mr. Wilmer's property.
 {¶ 15} Aside from the stock checks, the record shows that appellant cashed a number of personal checks from Mr. Wilmer to herself during her employment with him. Appellant alleges that she used this money to pay those who provided services for Mr. Wilmer such as her daughter, mother, and husband. Appellant also used the money to purchase things for Mr. Wilmer and for her own family, and claims that she returned portions of the money to Mr. Wilmer by tricking him into taking it. Appellant estimates that she spent $68,705.31 of the money Mr. Wilmer had given her on things for him. However, appellant was not able to provide evidence of these purchases for Mr. Wilmer. Thus, the record shows that appellant gained control over large sums of cash belonging to Mr. Wilmer.
 {¶ 16} Finally, there is enough evidence to show that appellant exerted control over Mr. Wilmer's property without his consent. Mr. Wilmer testified that he handled his own financial affairs. He denied the allegation that appellant helped him pay his bills and only admitted to her minimal participation, if any. When questioned at trial about whether he gave appellant checks from sales of his stock, Mr. Wilmer said he did not. He denied that he had ordered or authorized appellant to sell his stock or withdraw money from his accounts, and stated that he never paid her for services she may have provided him. The most he recalled paying for were meals. Appellant claims that Mr. Wilmer was attached to her family, thought of appellant as a granddaughter, and wanted to spoil her. However, at trial, Mr. Wilmer hardly recalled an intimate connection with appellant or her family. The evidence thus supports the conclusion that appellant obtained control over Mr. Wilmer's money without his consent. In view of the fact that all of the elements of aggravated theft were supported by sufficient evidence, appellant's sufficiency claim is without merit.
 {¶ 17} We next address appellant's argument that her conviction was against the manifest weight of the evidence. A claim that a conviction is against the manifest weight of the evidence entails a different test, attacking the credibility rather than the sufficiency of the evidence presented.Thompkins at 387. A reviewing court must consider the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.
 {¶ 18} Taking into consideration the evidence discussed in detail regarding appellant's sufficiency argument, we conclude that appellant's conviction was not against the manifest weight of the evidence. Bank employees testified as to appellant's extensive control over Mr. Wilmer's accounts. Bank records show that appellant obtained large sums of money by depositing Mr. Wilmer's stock checks into her personal account. Witness testimony contradicts the allegation that Mr. Wilmer would readily relinquish control over his finances. We are mindful that the weight to be given the aforementioned evidence and the credibility of the witnesses are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Although appellant offered a version of events that largely conflicted with the perceptions of the victim and other witnesses, the jury chose not to believe her. In view of the credible evidence supporting appellant's conviction, the jury did not lose its way when it found appellant guilty of aggravated theft.
 {¶ 19} Appellant's first assignment of error is overruled.
 {¶ 20} Assignment of Error No. 3:
 {¶ 21} "APPELLANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN TRIAL COUNSELS' PERFORMANCE WAS EXTREMELY DEFICIENT TO APPELLANT'S PREJUDICE, IN VIOLATION OF U.S. CONSTITUTION, AMENDMENT VI AND OHIO CONSTITUTION, ARTICLE I, SECTION 10."
 {¶ 22} In her third assignment of error, appellant claims that her counsel's performance was deficient because counsel failed to challenge the victim's competence before and during trial. She argues that the duty to explore the issue of competence was triggered both by the charges, which questioned the victim's ability to furnish sound consent, and by the victim's deteriorated mental state at trial.
 {¶ 23} To determine whether counsel's performance constitutes ineffective assistance, we must determine whether counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result. Strickland v.Washington (1984), 466 U.S. 668, 687-88, 693. Prejudice exists where appellant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. at 694. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. State v.Bradley (1989), 42 Ohio St.3d 136, 142, citing Strickland at 689.
 {¶ 24} Appellant insists that, for the duration of her employment, Mr. Wilmer was an alert and active man who maintained control over his affairs and engaged in intellectual activities such as wrapping up his probate cases, reading, and bill paying. Appellant was surprised by Mr. Wilmer's trial appearance, questioning his competence after opining that he appeared as a mentally worn down version of the man she had known while in his employ.
 {¶ 25} Regardless of whether we agree with defense counsel's strategic option to avoid the issue of Mr. Wilmer's competence, it is not the role of this court to second guess what appears to be counsel's trial strategy. State v. Wells, Warren App. No. CA2005-04-050, 2006-Ohio-874, ¶ 11, citing State v. Baker (Aug. 23, 1999), Clermont App. No. CA98-11-108, at 18. While the wisdom of an attorney's trial strategy may be debatable, trial tactics, even "debatable trial tactics," do not constitute a denial of effective assistance of counsel. State v. Leonard,104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146; State v. Phillips,74 Ohio St.3d 72, 85, 1995-Ohio-171; State v. Clayton (1980),62 Ohio St.2d 45, 49. Permitting Mr. Wilmer to testify allowed the defense the opportunity to define Mr. Wilmer's relationship with appellant in an attempt to give credence to appellant's testimony. Thus, counsel's performance did not fall below an objective standard of reasonableness. Even had defense counsel raised the issue of Mr. Wilmer's competence, the result of the trial would likely not have been different. Mr. Wilmer's daughter, Adair Kornman, testified that her father had not mentally deteriorated much since the events described herein occurred. Mr. Wilmer's testimony also demonstrated his competency to testify. The record supports Mr. Wilmer's recollection of events surrounding the management of his finances. Consequently, appellant was not prejudiced by her counsel's failure to question Mr. Wilmer's competence.
 {¶ 26} Appellant's third assignment of error is overruled.
 {¶ 27} Assignment of Error No. 4:
 {¶ 28} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANTA-PPELLANT WHEN IT ORDERED RESTITUTION TO MS. KORMAN [SIC] IN THE AMOUNT OF $273,486.95."
 {¶ 29} In her fourth assignment of error, appellant asserts that the amount of restitution should be limited to $109,000 to reflect the amount originally charged in the complaint. Furthermore, appellant argues that the court erred in awarding restitution to Adair Kornman. Appellant emphasizes that Mr. Wilmer is the proper restitution recipient because he is still living. In addition, although Kornman obtained Mr. Wilmer's power or attorney at some time before trial, Kornman was not the victim and thus was an improper beneficiary under the restitution order.
 {¶ 30} R.C. 2929.18(A)(1) provides that a trial court may order a felony offender to pay restitution "to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss." The amount of restitution is limited to the actual loss or damage caused by the offense for which the defendant is convicted, and must be established to a reasonable degree of certainty before restitution can be ordered.State v. Brumett, Butler App. No. CA2003-05-135,2004-Ohio-2211, ¶ 5. An appellate court may not modify a financial sanction unless it finds by clear and convincing evidence that it is not supported by the record or is contrary to law. See R.C. 2953.08(G)(2).
 {¶ 31} The record reveals that appellant failed to preserve any arguments regarding the restitution order. Generally, a party may not address for the first time on appeal any issue or error that the party could have called to the trial court's attention at a time when the trial court could have ruled on the issue, or corrected the error, or avoided the error altogether. State v.Awan (1986), 22 Ohio St.3d 120, 123. Appellant has therefore waived any issues regarding the trial court's restitution order.
 {¶ 32} Appellant's fourth assignment of error is overruled.
 {¶ 33} Assignment of Error No. 2:
 {¶ 34} "IMPOSITION OF A PRISON TERM GREATER THAN THE MINIMUM UPON A FIRST TIME OFFENDER WITH NO RECORD IS NOT SUPPORTATED [SIC] BY THE RECORD AND WAS IMPOSED CONTRARY TO LAW AND VIOLATES APPELLANT'S CONSTITUTIONAL RIGHTS."
 {¶ 35} Assignment of Error No. 5:
 {¶ 36} "[THE TRIAL] COURT ERRED IN ITS JUDGEMENT [SIC] ENTRY IN IMPOSING A 5 YEAR MANDATORY POST RELEASE CONTROL PERIOD."
 {¶ 37} In her second assignment of error, appellant maintains that the imposition of a nonminimum sentence based upon findings not made by a jury infringed upon her Sixth Amendment rights and violated the rule set out by the United States Supreme Court inBlakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531. In her fifth assignment of error, appellant asserts that the trial court erroneously impressed a five-year term of post-release control in its judgment entry of sentence in contravention of the statutorily authorized three-year term. The state concedes that the trial court made a clerical error in imposing a five-year term of post-release control.
 {¶ 38} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court ruled that certain Ohio sentencing laws requiring judicial fact-finding prior to the imposition of nonminimum or consecutive sentences are unconstitutional in light of Blakely. As a result of the high court's severance of the applicable provisions from Ohio's sentencing code, judicial fact-finding prior to the imposition of a sentence within the basic ranges of R.C. 2929.14(A) is no longer required. Foster
at paragraph two of the syllabus. See, also, State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855, paragraph three of the syllabus. The Foster court mandated that all cases pending on direct review in which the unconstitutional sentencing provisions were applied be remanded for resentencing. Foster at ¶ 104. Accordingly, we remand this case for resentencing consistent withFoster.
 {¶ 39} Pursuant to R.C. 2967.28(B), the proper term of post-release control for a first-degree felony is five years and for a second-degree felony three years. The documents in the record exhibit discrepancies regarding precisely which level of felony appellant's conviction entails. The indictment and bill of particulars both specify that the offense charged was a first-degree felony. At the commencement of jury instructions at trial, the court explained to the jury the necessity of making findings of whether or not the value of the property stolen exceeded $100,000 and whether or not the property was taken from an elderly person, both of which are findings for first-degree aggravated theft. On later instruction regarding the special verdict questions, the court noted that there were dollar ranges listed on the form from which the jury could choose. Had the jury opted for a dollar amount less than $100,000, the offense could not have been classified as first-degree aggravated theft. See R.C. 2913.02(B)(3). The jury verdict itself did not specify the degree of felony, but the jury found that the property value stolen exceeded $100,000 and that it was taken from an elderly person, reflecting first-degree aggravated theft. At sentencing, the trial court stated that "Ms. Dyer was found guilty by a jury of a felony one theft." Contrarily, both the jury verdict entry and the judgment entry of conviction specify that appellant was found guilty of second-degree aggravated theft.
 {¶ 40} The discrepancy in these documents appears to be a clerical mistake. See, e.g., State v. Brown, Franklin App. No. 03AP-130, 2004-Ohio-2990, ¶ 121-127. On remand, the trial court will have the opportunity to clarify whether the appellant was convicted of first or second-degree aggravated theft. The court may then modify the entries as necessary to reflect the degree of felony and the resultant statutorily authorized term of post-release control. See R.C. 2967.28(B).
 {¶ 41} Appellant's second and fifth assignments of error are sustained.
 {¶ 42} We reverse the trial court's judgment as to sentencing and remand this matter for resentencing in accordance with law and consistent with this opinion.
Young and Bressler, JJ., concur.
[1] R.C. 2913.02(B)(3) provides in relevant part: "Except as otherwise provided in division (B)(4), (5), or (6) of this section, if the victim of the offense is an elderly person or disabled adult, a violation of this section is theft from an elderly person or disabled adult * * *. If the value of the property or services stolen is one hundred thousand dollars or more, theft from an elderly person or disabled adult is a felony of the first degree."