[Cite as *State v. Collins*, 2015-Ohio-3710.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

STATE OF OHIO,                              :

      Plaintiff-Appellee,               :

                                        :

    - vs -                                     :

                                          :

EDMUND E. COLLINS,                         :

      Defendant-Appellant.              :

CASE NO. CA2014-11-135

O P I N I O N
9/14/2015

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 13CR29567

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Michael K. Allen & Associates, Mary K. Martin, 5181 Natorp Blvd., Mason, Ohio 45040, for defendant-appellant

**PIPER, P.J.**

{¶ 1}   Defendant-appellant, Edmund E. Collins, appeals from his convictions and sentence in the Warren County Court of Common Pleas for improperly discharging a firearm into a habitation and tampering with evidence.  For the reasons discussed below, we affirm the decision of the trial court.

{¶ 2}   On October 12, 2013, individuals who live on Pioneer Village Road near Caesar

Creek State Park reported hearing a series of gunshots and observed two men with a white truck parked along the side of the road near their neighbor's house. Early the next morning, Helen Walker returned home from work to a "shattered" front door. After entering, she noticed bullet holes throughout her home, including in her walls, picture frames, and flat-screen television. When the Warren County Sheriff's Office investigated, Walker relayed to the deputies she had just moved into the house with her nine-year-old daughter 12 days ago. Prior to that time, appellant's wife, Missy Collins, lived at the residence with her boyfriend.

{¶ 3} On November 12, 2013, appellant was indicted on one count of improperly discharging a firearm into a habitation in violation of R.C. 2923.161(A)(1), with a gun specification pursuant to R.C. 2941.145(A), and one count of tampering with evidence in violation of R.C. 2921.12(A)(1).

{¶ 4} Nineteen witnesses, including eyewitnesses, law enforcement personnel, appellant's son, and appellant's co-defendant, John Weaver, testified during a three-day jury trial. After hearing the evidence, the jury found appellant guilty of all counts, including the firearm specification, and the trial court sentenced appellant to an aggregate of five years in prison. After a restitution hearing, appellant was ordered to pay $4,689 in restitution to Walker and her landlord.

{¶ 5} Appellant now appeals, asserting four assignments of error for review. For ease of analysis, we will discuss appellant's assignments of error out of order.

{¶ 6} Assignment of Error No. 4:

{¶ 7} THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} In his fourth assignment of error, appellant argues the jury's verdict was against the manifest weight of the evidence because the testimony of co-defendant Weaver, who appeared as a witness for the state, sometimes deviated from the testimony of other

eyewitnesses. Appellant also asserts because Weaver admitted to having five or six mixed drinks prior to the incident and was intoxicated, the jury lost its way and created a manifest miscarriage of justice when it believed his testimony.

{¶ 9} When considering whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 45; *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In making its determination, a reviewing court must be mindful "the weight to be given to the evidence and the credibility of witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). Furthermore, a jury verdict may only be reversed as against the manifest weight of the evidence when there is unanimous disagreement with the jury's verdict. *State v. Gibbs*, 134 Ohio App.3d 247, 255 (12th Dist.1999).

{¶ 10} At trial, Weaver testified that on October 12, 2013, he met appellant at a bar. As they were drinking, appellant became increasingly agitated about his wife, Missy Collins, leaving him for another man. Weaver testified he and appellant left the bar and went to appellant's house where appellant retrieved a handgun wrapped in a white towel. With Weaver along, appellant then drove in a 2007 Ford F-150 to the parking lot of the Country Kitchen restaurant where appellant loaded the weapon and threw away the remaining ammunition. The box of ammunition was wrapped in a yellow cloth and thrown into the restaurant's dumpster.

{¶ 11} According to Weaver's testimony, appellant next drove to where he thought Missy lived in order to "scare" her. Appellant parked in front of the house, where Weaver got

- 3 -

out of the truck and began shooting in the direction of the house. When appellant realized someone was coming towards them on a riding lawn mower, he told Weaver to get back into the truck. Before Weaver could do so, appellant moved the truck, striking Weaver and knocking him into the ditch. Weaver testified appellant then got out of the truck and helped him from the ditch and into the truck. Weaver testified that prior to appellant placing the gun into the truck, appellant discharged the gun, and then quickly drove away. Weaver testified that soon thereafter appellant parked along a nearby road, exited the truck, and tossed the gun. When appellant returned, he told Weaver he should have thrown the gun farther into the ditch. Shortly after the men drove away, Deputy David Sheppard pulled them over. The deputy was in the process of responding to the scene where shots were reportedly fired. The men denied knowledge of any shooting, and Deputy Sheppard let them leave and then proceeded to the scene.

{¶ 12} Patricia Stover and Paul Gordon, two of Walker's neighbors, observed the shooting. Both Stover and Gordon testified they heard multiple gunshots on October 12, 2013, and saw two men in the vicinity of a white pickup truck. One of the men was "stumbling" or "wallowing" in the ditch. Stover called 911 from her front porch and Gordon drove towards the truck on his riding lawn mower to obtain the license plate number, which Stover conveyed to the dispatcher. Both observed the driver get out of the truck, put the gun into the truck, and help the other man climb out of the ditch and into the truck. Stover testified they then "sped off." Gordon testified he recognized the truck because the woman who formerly lived in Walker's house used to drive it.

{¶ 13} A Country Kitchen employee testified that on October 12, 2013, he observed a white Ford F-150 pull up to the dumpster, and after a minute or two, the driver got out, put something in the dumpster, and left. Detective Paul Barger with the Warren County Sheriff's Office testified that when he was investigating the shooting, he found a box of ammunition

wrapped in a yellow cloth in a dumpster at the Country Kitchen.

{¶ 14} Detective Thomas Naumovski with the Warren County Sheriff's Office testified he searched for the gun used in the shooting based on information obtained from Weaver. While police initially did not find the gun, a semi-automatic handgun was later found by a 4-H group picking up trash at Caesar Creek State Park, about a mile away from the area from where the detective had been searching. Tracy Parker, who was picking up trash, testified they found the weapon in a ditch wrapped in a towel. Furthermore, Chris Monturo, a forensic firearm examiner at the Miami Valley Regional Crime Laboratory, testified the casings recovered from the shooting had the same class characteristics as the weapon found at the state park. Another witness, Thomas Henderson, confirmed appellant had a semi-automatic handgun like the one that was found. Henderson further testified appellant admitted to Henderson that appellant put the truck into reverse with the door open and it knocked Weaver into the ditch. Appellant told Henderson to tell Walker that appellant was sorry.

{¶ 15} According to all accounts, two men in a white truck stopped in front of Missy's former residence where multiple gunshots were fired. Weaver's testimony was confirmed by eyewitness testimony that Gordon drove towards them on his riding lawnmower, which caused their quick departure. While some eyewitness testimony did not indicate the driver of the truck actually fired the gun, the jury was instructed on complicity to improperly discharging a firearm into a habitation, and a charge of complicity may be in terms of the complicity statute or the principal offense. *See In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 39.

{¶ 16} Several witnesses corroborated Weaver's testimony regarding appellant's disposal of remaining ammunition and the handgun. The ammunition found in the Country Kitchen's dumpster was wrapped in a yellow cloth as stated by Weaver and was consistent with the casings found at the scene. While the firearm was not found in the exact location of

Weaver's description, a semi-automatic handgun that had the same class characteristics as the casings recovered from the scene was found wrapped in a towel in a ditch about a mile away.

{¶ 17} Contrary to appellant's arguments, Weaver's testimony did not differ in any significant way from other eyewitness testimony. Rather, eyewitness testimony generally corroborated Weaver's testimony, and the fact Weaver was intoxicated at the time relates to his credibility. *See State v. Shipley*, 10th Dist. Franklin No. 05AP-385, 2006-Ohio-950, ¶ 9; *State v. Rice*, 9th Dist. Summit No. 13517, 1988 WL 76643, *1 (July 20, 1988). Given the trier of fact has the primary responsibility to weigh the evidence and evaluate witness credibility, we find the jury did not lose its way or create a manifest miscarriage of justice if it believed Weaver's testimony and found appellant guilty of improperly discharging a firearm into a habitation with a firearm specification and tampering with evidence. Additionally, the jury was instructed that they could believe all the testimony of a witness or any part of the testimony of a witness. We note that even if Weaver's testimony that appellant discharged the handgun was not believable, the evidence is overwhelming that appellant aided and abetted the events such that the jury could have found appellant guilty of the charges as a complicitor. R.C. 2923.03. Appellant's fourth assignment of error is overruled.

{¶ 18} Assignment of Error No. 3:

{¶ 19} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

{¶ 20} In his third assignment of error, appellant argues his trial counsel's performance fell below an objective standard of reasonableness that prejudiced him because it altered the trial's outcome. Appellant asserts his trial counsel failed to compel discovery in a timely manner, thereby forcing appellant to waive his speedy trial rights. Appellant also contends his trial counsel inadequately prepared for trial because his trial counsel did not obtain a video which may have been exculpatory.

{¶ 21} To establish ineffective assistance of counsel, appellant must show his trial counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). With respect to deficiency, appellant must show his counsel's performance "fell below an objective standard of reasonableness." *Strickland* at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and as a result "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

{¶ 22} In this instance, all of trial counsel's alleged errors relate to appellant's first appointed trial counsel, Eliot G. Bastian, who did not actually represent appellant at trial. On July 9, 2014, appellant expressed dissatisfaction with Bastian for failing to timely pursue "six key pieces of evidence" that were no longer available. At appellant's request, Bastian withdrew, and the trial court appointed new trial counsel.

{¶ 23} Prior to removal, Bastian requested two continuances, the first on December 31, 2013, and the second on March 11, 2014. At the hearing on December 31, 2013, Bastian indicated he needed the continuance to adequately prepare for trial because he just recently received discovery from the state. At the following hearing, although the state had produced discovery, Bastian requested funds to hire a private investigator to pursue additional evidence and witnesses. Bastian also indicated appellant was requesting a continuance due to appellant's recent medical issues. In both instances, appellant waived his right to a speedy trial.

{¶ 24} We find the decisions of appellant's first trial counsel were reasonable and constituted sound trial strategies. *See State v. McBreen*, 54 Ohio St.2d 315 (1978), paragraph one of the syllabus (waiving speedy trial rights is sound trial strategy when made

for the purposes of trial preparation); *State v. Bennett*, 6th Dist. Wood No. WD-08-005, 2008-Ohio-5812, ¶ 11 (presuming discovery decisions are trial strategies that do not constitute ineffective assistance of counsel).  Although appellant contends Bastian did not obtain video footage, the record reflects Bastian pursued additional lines of evidence, and the continuances and waiver of appellant's speedy trial rights allowed Bastian to prepare for trial.

{¶ 25} Even if Bastian's conduct fell below an objective standard of reasonableness, it has not been demonstrated how the speculative video footage or a trial held within a shorter time frame would have made a significant difference in the trial's outcome, given the overwhelming evidence against appellant.  As such, appellant was not prejudiced by the performance of his first trial counsel.  Appellant's third assignment of error is therefore overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING APPELLANT TO PAY RESTITUTION IN THE AMOUNT OF $4,689.

{¶ 28} In his second assignment of error, appellant argues the trial court abused its discretion by ordering him to pay $4,689 in restitution.  Specifically, appellant asserts the trial court erred by ordering him to pay Walker the amount requested in her victim impact statement of $2,889, and by ordering him to pay restitution in the amount of $1,800 to Walker's landlord, Brett Clark.

{¶ 29} In examining the proper standard of review pertaining to restitution as part of a felony sentence, we note our inconsistent application.  Recently, we employed an abuse of discretion standard in reviewing the imposition of restitution.  *See State v. Lyons*, 12th Dist. Warren No. CA2013-08-074, 2014-Ohio-2239, ¶ 13; *State v. Hatmaker*, 12th Dist. Butler No. CA2012-10-198, 2013-Ohio-3202, ¶ 5; *State v. Hipsher*, 12th Dist. Warren No. CA2011-12-128, 2012-Ohio-3206, ¶ 13.

{¶ 30} Previously, we had held that pursuant to the felony sentencing appeal statute, R.C. 2953.08(G)(2), "An appellate court may not modify a financial sanction unless it finds by clear and convincing evidence that it is not supported by the record or is contrary to law." *State v. Dyer*, 12th Dist. Butler No. CA2005-05-109, 2006-Ohio-3537, ¶ 29. *See State v. Kling*, 12th Dist. Butler No. CA2003-08-191, 2004-Ohio-3911, ¶ 42; *State v. Kelly*, 145 Ohio App.3d 277, 282 (12th Dist.2001); *State v. Swart*, 12th Dist. Clinton No. CA2000-02-006, 2000 WL 1577297, *4 (Oct. 23, 2000).

{¶ 31} After reviewing statutory language, we find that employing the standard of review set forth in R.C. 2953.08(G)(2) best comports with the criminal procedure and felony sentencing statutes.[1] Furthermore, utilizing this standard is consistent with our opinion in *State v. Crawford*, where we held that R.C. 2953.08(G)(2) is the proper standard of review for all felony sentences. *Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6-8. Accordingly, the proper standard of review for analyzing the imposition of restitution as a part of a felony sentence is whether the sentence complies with R.C. 2953.08(G)(2)(b). *See id.*[2]

{¶ 32} When imposing restitution, the amount of restitution must bear a reasonable relationship to the victim's actual loss to comport with due process. *State v. Stamper*, 12th Dist. Butler No. CA2009-04-115, 2010-Ohio-1939, ¶ 17; *see* R.C. 2929.18(A)(1). Thus, the restitution amount is limited to the actual loss or damage caused by the offender and must be

---

1. R.C. 2953.08(G)(2)(b) provides, "The appellate court may take any action authorized * * * if it clearly and convincingly finds either * * * [t]hat the record does not support the sentencing court's findings * * * [or] the sentence is otherwise contrary to law." Pursuant to R.C. 2929.01(EE), a "sentence" is a "sanction or combination of sanctions" imposed on an offender by a sentencing court. A financial sanction is included in the definition of "sanction," and restitution is a form of a financial sanction. R.C. 2929.01(DD); R.C. 2929.18(A)(1). Consequently, by applying these definitions, the term "sentence" utilized in R.C. 2953.08(G)(2)(b) encompasses restitution.

2. We recently certified a conflict to the Ohio Supreme Court so it might discuss and pronounce the correct standard of review. *State v. Brandenburg*, 12th Dist. Butler Nos. CA2014-10-201 and CA2014-10-202, 2015-Ohio-2573.

established to a reasonable degree of certainty. *Dyer* at ¶ 30.

**{¶ 33}** In order to determine the proper amount of restitution, R.C. 2929.18(A)(1) allows a court to base the restitution order

> on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. * * *.

As such, a victim's loss may be supported through documentary evidence or testimony, including that of the victim. *Lyons*, 2014-Ohio-2239 at ¶ 14. It is important to recall that Evid.R. 101(C) suspends the Rules of Evidence in certain proceedings, such as sentencing. *State v. Cook*, 83 Ohio St.3d 404, 425 (1998). As a hearing to determine restitution is a part of sentencing, a court is not restricted by the Rules of Evidence. *Lyons* at ¶ 12. A victim impact statement may be used in calculating a restitution amount, but where the amount of loss referenced in a victim impact statement appears doubtful or uncertain, "documentary or other corroborating evidence may be required to verify the loss or expense." *State v. Griffin*, 6th Dist. Lucas No. L-11-1283, 2013-Ohio-411, ¶ 44.

**{¶ 34}** In this instance, appellant specifically requested a restitution hearing at the end of the three-day jury trial. At the restitution hearing, the trial court considered a receipt showing the amount paid by Clark to repair the damage to his rental property and also reviewed Walker's victim impact statement listing itemized replacement costs for damage to her personal property. The receipt and itemized victim impact statement were supported by testimony of an individual who helps maintain Clark's rental property who observed bullet holes in both the rental property and much of Walker's personal property. Appellant contested the cost of replacement or repair to the property and cross-examined the witness regarding her observations. Although appellant disputed the amount being suggested, the

victims provided a receipt and an itemized list supported by testimony of those who observed the damage caused by bullets. Relying on this information, the trial court ordered a total restitution amount of $4,689 to be paid jointly and severally by appellant and Weaver.

{¶ 35} In light of the foregoing, we find the amount of restitution was reasonably related to the victims' loss and established to a reasonable degree of certainty. As such, the restitution amount ordered was supported by the record and not contrary to law. Appellant's second assignment of error is overruled.

{¶ 36} Assignment of Error No. 1:

{¶ 37} THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ASSESSING RESTITUTION.

{¶ 38} In his first assignment of error, appellant asserts the trial court's imposition of restitution was plain error because it failed to consider appellant's ability to pay the amount ordered. While appellant concedes the trial court made a finding in its judgment entry that "the Defendant has or is reasonably expected to have the means to pay the financial sanctions," he nonetheless contends the trial court never considered appellant's ability to pay. Additionally, appellant argues the record is lacking of any factual support for the trial court's finding in its entry. Appellant now argues the evidence before the trial court actually demonstrated his *inability* to pay restitution as he received appointed counsel due to his indigence. However, we note appellant did not advance any of these arguments before the trial court.

{¶ 39} At no time, neither immediately after the trial, nor at the restitution hearing, did appellant assert that he had an inability to pay restitution. While appellant requested a hearing on restitution, at the hearing itself, testimony and evidence were only relevant to the *amount* of restitution and not appellant's *ability* to pay restitution. The parties agree that the record contains no argument, objection, or proffer indicating appellant could not pay

restitution. This being the case, we find appellant forfeited the issue of his ability to pay and did not preserve the issue for appellate review. *See State v. Rogers*, Slip Opinion No. 2015-Ohio-2459, ¶ 22.

{¶ 40} In *Rogers*, the Ohio Supreme Court noted in discussing plain error that "'holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court - where, in many cases, such errors can be easily corrected.'" *Rogers* at ¶ 24, quoting *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 23. In this instance, appellant had ample opportunity to raise the alleged error before the trial court. Appellant never raised his inability to pay at the end of the three-day jury trial when he requested a restitution hearing, nor did he raise the issue at the restitution hearing. In fact, by focusing on the amount of restitution, from the trial court's perspective, appellant essentially acknowledged he possessed the ability to pay some restitution and only disagreed as to how much he should be ordered to pay the victims. As such, the proper standard of review in this instance is plain error. *See State v. Wilkins*, 3d Dist. Shelby No. 17-13-13, 2014-Ohio-983, ¶ 8; *State v. Bemmes*, 1st Dist. Hamilton No. C-010522, 2002 WL 507337, at * 3 (Apr. 5, 2002). Appellant acknowledges plain error as the proper standard of review to be applied in his written assignment of error.

{¶ 41} Crim.R. 52(B) defines plain error as any error or defect "affecting substantial rights [that] may be noticed although they were not brought to the attention of the court." A substantial right is implicated when a trial court's error affected the trial's outcome. *Rogers* at ¶ 22. Even if an error affected the trial's outcome, a reviewing court may find plain error only using the "utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. McCollum*, 12th Dist. Clermont No. CA2014-11-077, 2015-Ohio-3286, ¶ 11; *Rogers* at ¶ 23. The doctrine of plain error also applies to sentencing issues. *See Rogers.* "A trial court commits plain error by ordering [an offender] to pay

- 12 -

restitution without first considering his ability to pay." *State v. Williams*, 9th Dist. Summit No. 26014, 2012-Ohio-5873, ¶ 17. *See State v. Moore*, 12th Dist. Butler No. CA2006-09-242, 2007-Ohio-3472 (a trial court's failure to consider an offender's present or future ability to pay a financial sanction rises to the level of plain error as the requirement is legislatively mandated).[3]

**{¶ 42}** When imposing restitution, R.C. 2929.19(B)(5) provides, "Before imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." Restitution is a form of a financial sanction. R.C. 2929.18(A)(1). By mandating the trial court consider the offender's ability to pay, R.C. 2929.19(B)(5) places a narrowly tailored responsibility or mandate upon the trial court to consider an offender's ability before ordering restitution be paid. *See Moore* at ¶ 8. While the trial court must consider the offender's present and future ability to pay, there is no express evidence which must be considered or weighed. *State v. Simms*, 12th Dist. Clermont No. CA2009-02-005, 2009-Ohio-5440, ¶ 9. There are also no specific factors that must be taken into account or explanations which must be made on the record. *Id.* R.C. 2929.19(B)(5) does not require the trial court's impressions, observations, or deliberations regarding an offender's ability to pay restitution be placed on the record. *See State v. Fisher*, 12th Dist. Butler No. CA98-09-190, 2002-Ohio-2069.

**{¶ 43}** Pragmatically, if an offender were to suggest he did not possess the present or future ability to pay restitution, the trial court would undoubtedly address the issue, giving explanation of its consideration to the issue. If an offender does not raise the issue of his inability to pay, any error in not articulating what was considered by the trial court is invited by

---

3. Contrary to the conclusion of the dissent as to the standard of review, we note the standard of review applied in *Moore* was plain error. *State v. Moore*, 12th Dist. Butler No. CA2006-09-242, 2007-Ohio-3472, ¶ 12.

the offender. *State v. Bey*, 85 Ohio St.3d 487, 493 (1999) (holding a party may not take advantage of an error of which he invited or induced). Here, appellant indicated he wanted a hearing on restitution, but only contested the amount, not the present or future ability to pay.

{¶ 44} We emphasize that a court speaks through its judgment entries. *State v. Johnson*, 12th Dist. Butler No. CA2012-10-210, 2013-Ohio-2275, ¶ 10. As such, any responsibility placed upon the trial court by R.C. 2929.19(B)(5) is satisfied "when the trial court indicates in its *judgment entry* that it has considered the offender's present and future ability to pay."[4] (Emphasis added.) *State v. Anderson*, 172 Ohio App.3d 603, 2007-Ohio-3849, ¶ 24 (11th Dist.). *See Kling*, 2004-Ohio-3911, at ¶ 44-45; *State v. White*, 10th Dist. Franklin No. 10AP-34, 2011-Ohio-2364, ¶ 78.

{¶ 45} The text of R.C. 2929.19(B)(5) only requires the trial court *consider* an offender's present and future ability to pay a financial sanction.[5] In this instance, the trial court complied with R.C. 2929.19(B)(5) by specifically finding in its judgment entry that appellant possessed the present or future ability to pay financial sanctions. In order to make such a finding documented in its journal entry, the trial court obviously relied upon its collective perceptions and impressions formed throughout the proceedings.[6]

{¶ 46} Furthermore, this court, along with other courts, has held there is a distinction

---

4. We note R.C. 2929.19(B)(5) was formerly R.C. 2929.19(B)(6).

5. We recognize this district and other appellate districts have reviewed presentence investigation reports and portions of the record to establish the trial court performed the act of considering an offender's ability to pay. *See, e.g., State v. Moore*, 12th Dist. Butler No. CA2002-12-307, 2003-Ohio-6255, ¶ 38-39; *State v. Alvarez*, 3d Dist. Defiance No. 4-08-02, 2008-Ohio-5189, ¶ 26-28. However, that exercise is generally performed when the trial court merely ordered restitution without any finding regarding the ability to pay. In those cases, reviewing courts have looked to the record for facts that justify or support the restitution order. These facts inferentially establish the trial court must have considered them when making the restitution order whether or not the determination was included in the judgment entry.

6. In relying on *Christman* and *Robinson*, the dissent overlooks the significance of the trial court's judgment entry that had a finding regarding the ability to pay as an indication the court considered appellant's ability to pay; neither *Christman* nor *Robinson* included a judgment entry where the court made a finding regarding the ability to pay. *State v. Christman*, 12th Dist. Preble Nos. CA2009-03-007 and CA2009-03-008, 2009-Ohio-6555, ¶ 21; *State v. Robinson*, 3d Dist. Hancock No. 5-04-12, 2004-Ohio-5346.

between an offender's indigence for the purpose of appointing counsel and an offender's inability to pay a financial sanction or fine. *State v. Johnson*, 12th Dist. Butler No. CA2011-11-212, 2014-Ohio-3776, ¶ 15-16 (finding the fact offender could not afford private counsel at the time criminal proceedings began did not mean he could not afford to pay a fine at some point in the future). *State v. White*, 5th Dist. Perry No. 12-CA-00018, 2013-Ohio-2058, ¶ 16; *State v. Andrews*, 1st Dist. Hamilton No. C-110735, 2012-Ohio-4664, ¶ 29; *State v. Waddell*, 4th Dist. Lawrence No. 10CA27, 2011-Ohio-4629, ¶ 8, fn. 2. The fact that appellant received appointed counsel neither prohibited the trial court from imposing restitution, nor created a record that failed to support the trial court's finding that appellant had the present or future ability to pay the financial sanction. In fact, in addition to evidence indicating appellant was indigent for the purposes of obtaining appointed counsel, the trial court heard evidence at the trial, observed appellant firsthand, and assessed his demeanor, including his physical and mental abilities. The trial court had the benefit of seeing and hearing appellant as well as testimony about appellant from others.[7] After making such observations, the trial court found appellant had the present or future ability to pay financial sanctions as indicated in its judgment entry.[8] As such, no manifest miscarriage of justice occurred rising to the level of plain error.

{¶ 47} Even if appellant had argued to the trial court he had an inability to pay, which would have continued into the future and plain error was inapplicable as our standard of

---

7. The trial court heard testimony regarding appellant's possession of a semi-automatic handgun, driving a 2007 Ford F-150 truck, as well as testimony from appellant's son establishing appellant's operation of an earlier business establishment. Appellant addressed the court at sentencing and his counsel represented that appellant had no prior felony record. Appellant may be the recipient of medical treatment while incarcerated, yet nothing in the record supports a determination that appellant will not have the future ability to pay restitution.

8. It is the dissent's desire for the plain meaning of the statute to encompass more than that which is expressly stated. However, an enlargement of the statute is not within our purview, but rather is solely within the providence of the legislature. *See State ex rel. McGraw v. Gorman*, 17 Ohio St.3d 147, 149 (1985) (when a statute is clear and unambiguous, "the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged"); *see State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584 (1995) ("[i]f the meaning of a statute is unambiguous and definite, then it must be applied as written and no further interpretation is appropriate").

review, the standard of review contained in R.C. 2953.08(G)(2) is "extremely deferential." *Crawford*, 2013-Ohio-3315, at ¶ 8. It is the court of appeals that must clearly and convincingly find from the record that the trial court actually did not consider appellant's ability to pay. *Id.* We are unpersuaded that there must be a record other than the trial court's judgment entry indicating the trial court considered the ability to pay. Based on the record, we cannot clearly and convincingly find the trial court failed to consider appellant's present or future ability to pay financial sanctions or that such an order was clearly and convincingly contrary to law. Accordingly, appellant's first assignment of error is overruled.

{¶ 48} Judgment affirmed.

S. POWELL, J., concurs.

M. POWELL, J, concurs in part and dissents in part.

**M. POWELL, J., concurring in part and dissenting in part.**

{¶ 49} I concur with the majority in its resolution of appellant's third and fourth assignments of error. As to the first assignment of error, I respectfully dissent from the majority's opinion that the trial court complied with the legislative mandate of R.C. 2929.19(B)(5) to consider appellant's ability to pay restitution and that the assignment of error is subject to plain error analysis. For the reasons that follow, I would sustain appellant's first assignment of error and reverse the trial court's imposition of restitution. In view of reversal upon the first assignment of error, I would find the second assignment of error regarding the amount of restitution moot.

{¶ 50} Although the majority presents the issue of appellant's ability to pay restitution as one subject to plain error analysis, plain error is not the proper standard of review in this instance. Plain error presupposes that an issue has otherwise been forfeited due to a failure

to properly bring the matter to the attention of the trial court in the first instance. This court and other courts have rejected the application of forfeiture to this precise issue and have held that R.C. 2929.19(B)(5) places an affirmative requirement on the trial court to ascertain an offender's ability to pay, and as such, the issue of an offender's ability to pay is not subject to forfeiture. *State v. Moore*, 12th Dist. Butler No. CA2006-09-242, 2007-Ohio-3472, ¶ 8; *State v. Scott*, 6th Dist. Lucas No. L-01-1337, 2003-Ohio-1868. *See State v. Slater*, 4th Dist. Scioto No. 01 CA2806, 2002-Ohio-5343, ¶ 10 ("[w]hile criminal defendants may [forfeit] their own rights, they cannot [forfeit] a mandatory duty imposed on trial courts").[9] Stated somewhat differently, appellant did not need to bring the matter to the attention of the trial court as the trial court's attention is directed to the matter by R.C. 2929.19(B)(5). Therefore, our proper standard of review is not plain error, but rather whether the ordered restitution is clearly and convincingly contrary to law. *See* R.C. 2953.08(G)(2)(b).[10]

{¶ 51} By providing in R.C. 2929.19(B)(5) that a sentencing court must consider an offender's present and future ability to pay a financial sanction, the General Assembly implicitly required the court to determine the offender has the wherewithal to pay at some time. Otherwise there would be no reason to consider an offender's ability to pay as a prerequisite to the imposition of a financial sanction. R.C. 2929.19(B)(5) is meaningless if interpreted to permit imposition of a financial sanction, without regard to an offender's ability

---

9. In *State v. Rogers*, Slip Opinion No. 2015-Ohio-2459, the Ohio Supreme Court clarified the distinction between "waiver" and "forfeiture." As "forfeiture" is "the failure to timely assert a right or object to an error," the proper term to be used in the situations cited in the cases above is "forfeiture" despite the cases utilizing the term "waiver." In *State v. Moore*, 12th Dist. Butler No. CA2006-09-242, 2007-Ohio-3472, we addressed the issue as one of "waiver." In view of the Supreme Court's opinion in *Rogers,* it is "forfeiture" as opposed to "waiver" that was involved.

10. Additionally, appellant requested a hearing on restitution. The record does not reflect whether the hearing was pursuant to R.C. 2929.18(A)(1) regarding the amount of restitution or pursuant to R.C. 2929.18(E) so that the trial court could inquire as to appellant's ability to pay restitution. In any event, the amount of restitution ordered necessarily implicates an offender's ability to pay as the wherewithal to pay restitution of $50 is different than that required to pay $4,000. The fact that appellant requested a hearing is further indication that he did not forfeit the issue.

to pay, so long as the sentencing court indicates consideration of the offender's ability to pay. In such an instance, consideration of the offender's ability to pay is of no purpose. The General Assembly certainly did not intend to impose a duty upon the trial court to perform a futile act.

{¶ 52} A trial court does not comply with its duty to consider an offender's ability to pay restitution by merely checking a box in the sentencing entry when the record does not reflect that an offender has the present or future ability to pay a financial sanction. *See Moore*, 2007-Ohio-3472, ¶ 11. The majority focuses on certain cases that hold where a trial court's sentencing entry, like here, indicates consideration of an offender's present and future ability to pay, R.C. 2929.19(B)(5) is satisfied. *See State v. Kling*, 12th Dist. Butler No. CA2003-08-191, 2004-Ohio-3911, ¶ 44-45; *State v. White*, 10th Dist. Franklin No. 10AP-34, 2011-Ohio-2364, ¶ 78; *State v. Anderson*, 172 Ohio App.3d 603, 2007-Ohio-3849, ¶ 24 (11th Dist.). These cases contain little or no discussion of what the record may have indicated regarding the offender's ability to pay the financial sanction imposed.[11] However, these cases do not hold that a statement in the sentencing entry that a trial court considered an offender's ability to pay supersedes a record that indicates to the contrary. In *State v. Christman*, 12th Dist. Preble Nos. CA2009-03-007 and CA2009-03-008, 2009-Ohio-6555, we affirmed the imposition of restitution despite the omission of a statement in the sentencing entry that the trial court had considered the offender's ability to pay. *Christman* at ¶ 21 ("the trial court did not expressly state, either at the restitution hearing or in its judgment entries of sentence, that it considered appellant's ability to pay prior to ordering restitution in both cases. This omission, however, is not determinative"). In doing so, we recognized the predominance of

---

11. *Anderson* discusses that the offender "will be only 28 at the time of his release from imprisonment. If the remorse he expressed at the sentencing hearing and his determination to fight his alcoholism are genuine, he should be able to lead a productive life upon release and make the requisite payments." *Anderson* at ¶ 26. Neither *Kling* nor *White* make any reference to what the record reflects as to the offenders' ability to pay. *See Kling*, at ¶ 44-45; *White* at ¶ 78.

the record. Conversely, an expression of compliance with R.C. 2929.19(B)(5) in a sentencing entry should not prevail over a record indicating otherwise. As detailed below, the record here does not reflect that appellant had an ability to pay the ordered restitution.

{¶ 53} According to the record, there was no presentence investigation report addressing appellant's age, health, educational level, skills, experience, or employment. *See, e.g., State v. Hubbard*, 12th Dist. Butler No. CA2014-03-063, 2015-Ohio-646, ¶ 68-71; *State v. Simms*, 12th Dist. Clermont No. CA2009-02-005, 2009-Ohio-5440, ¶ 10-12. Although afforded the opportunity, the trial court never inquired of appellant concerning his present or future ability to pay restitution or as to his financial status.[12] The only information apparent from the record indicates that appellant is not employed, has no other sources of income, has no assets, will serve the next three to five years in prison, will emerge a convicted felon, and suffers from a medical condition that has required several surgeries. The record further provides that appellant's former place of business was destroyed by a fire and the white truck appellant drove in the commission of this offense was being sold to Weaver by Weaver's assumption of the payments.

{¶ 54} The issue presented here was recently considered by the Third District in *State v. Brown*, 3d Dist. Seneca No. 13-15-06, 2015-Ohio-3402. In *Brown* the trial court imposed restitution in the amount of $10,999 despite the fact that the record disclosed that the 17-year-old defendant was indigent, had an 11th grade education, no income, no employment history, and was facing a prison term of 30 years to life. In reversing the sentence as regards to restitution the court of appeals held

> There is nothing in the record to indicate upon what the trial court
> made the determination that Brown had the ability or would have
> had the ability in the future to pay the restitution ordered prior to

---

12. In *Moore*, we reversed the imposition of a financial sanction because the record did not reflect that the trial court considered the offender's ability to pay and noted the trial court's failure to engage in such an inquiry. *Moore*, 2007-Ohio-3472 at ¶ 11.

imposing it. The trial court did not address the issue in any way prior to ordering restitution. * * * Without some evidence in the record to support the trial court's apparent conclusion that Brown had or would have the ability to pay restitution, this court must reverse the judgment as to restitution for failure to comply with R.C. 2929.19(B)(5).

*Id.* ¶ 12.

{¶ 55} The majority points out that the trial court likely relied upon its observations and dealings with appellant during the course of the proceedings to determine that appellant had a present or future ability to pay restitution. This may very well be the case. However, where a trial court relies upon such information that would otherwise be unapparent in the written record, the trial court must ensure that the information is made of record in order for a reviewing court to perform its duty. This is consistent with our precedent that "the record must contain evidence which establishes that the trial court complied with its duty to make the statutory determination regarding the offender's ability to pay."[13] *Christman*, 2009-Ohio-6555, at ¶ 20. *See also State v. Robinson*, 3d Dist. Hancock No. 5-04-12, 2004-Ohio-5346, ¶ 17 (as long as the record contains information concerning the defendant's ability to pay restitution and supports the trial court's determination, a hearing is not required). Unless the record contains information as to an offender's present or future ability to pay the financial sanction imposed, we must speculate as to what information the trial court considered and assume that such information, whatever it may be, supports the trial court's determination that the offender has the ability to pay. This renders the matter unreviewable and the right of appeal upon the issue illusory.

{¶ 56} As the majority notes, R.C. 2929.19(B)(5) does not require a trial court to consider or weigh any particular evidence or factors or make any particular explanations, impressions, observations or deliberations on the record. That the statute does not specify a

---

13. A trial court's indication that it considered an offender's ability to pay is not "evidence."

mode of compliance does not reduce compliance to a pro forma, mechanical exercise. The trial court must comply with its duty under R.C. 2929.19(B)(5) to consider an offender's ability to pay. This statutory mandate requires a trial court to do whatever may be necessary under the circumstances of the case to demonstrate compliance.

{¶ 57} In this case, the record does not reflect that the trial court engaged in a meaningful consideration of appellant's present or future ability to pay the ordered restitution. Therefore, the sentence, as regards to the order for restitution, is contrary to law. Consequently, I would reverse the trial court's imposition of restitution.

{¶ 58} With regard and respect for my colleagues in the majority, I dissent.